*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0266P (6th Cir.)
File Name: 02a0266p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DASHAWN LYONS,
      *Petitioner-Appellee,*

            *v.*

ANDREW JACKSON, Warden,
      *Respondent-Appellant.*

No. 00-2153

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-70453—Denise Page Hood, District Judge.

Argued: October 26, 2001

Decided and Filed: August 8, 2002

Before: BOGGS, GILMAN, and BRIGHT, Circuit Judges.[*]

———————

## COUNSEL

**ARGUED:** Thomas M. Chambers, OFFICE OF THE
PROSECUTING ATTORNEY, Detroit, Michigan, for
Appellant. John R. Minock, CRAMER MINOCK, Ann
Arbor, Michigan, for Appellee. **ON BRIEF:** Thomas M.

---

[*]The Honorable Myron H. Bright, Senior Circuit Judge of the United
States Court of Appeals for the Eighth Circuit, sitting by designation.

Chambers, OFFICE OF THE PROSECUTING ATTORNEY, Detroit, Michigan, for Appellant. John R. Minock, CRAMER MINOCK, Ann Arbor, Michigan, for Appellee.

BRIGHT, J., delivered the opinion of the court. GILMAN, J. (pp. 21-24), delivered a separate concurring opinion. BOGGS, J. (pp. 25-29), delivered a separate dissenting opinion.

_____

## OPINION

_____

MYRON H. BRIGHT, Circuit Judge. Andrew Jackson, the warden of a Michigan state correctional institution, appeals a federal district court's conditional grant of habeas corpus to prisoner Dashawn Lyons[1] on the ground of ineffective assistance of counsel. Lyons is currently serving a life sentence without parole after pleading guilty to first degree murder.

In 1990, Lyons was sixteen years old and had received an education to the seventh grade. On advice of counsel, who believed it likely the trial court would impose a juvenile sentence, Lyons pled guilty in Michigan state court to first degree murder. The trial court did sentence Lyons as a juvenile. The prosecution appealed, the Michigan Court of Appeals reversed, and Lyons received the only available adult sentence under Michigan law: life in prison without possibility of parole. Lyons' trial counsel did not consider or advise Lyons that the prosecutor could appeal the imposition of a juvenile sentence.

_____

[1] Lyons has changed his name legally to James Edwin Lyons, Jr.

Lyons petitioned for a writ of habeas corpus, and the federal district court[2] concluded that the failure of Lyons' counsel to inform him of the prosecutor's right to appeal, particularly in light of Lyons' youth at the time of the plea, constituted ineffective assistance of counsel. The court further concluded that a contrary determination on the facts and the law by the Michigan Court of Appeals constituted an unreasonable application of clearly established federal law as determined by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000); *Hill v. Lockhart*, 474 U.S. 52 (1985); and *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, the court granted Lyons' petition for a writ of habeas corpus on the ground of ineffective assistance of counsel.[3] The warden appeals. After a careful review of the record, we **AFFIRM** the district court.

## I.  BACKGROUND

On November 27, 1989, Lyons shot and killed Douglas Thomas. The state of Michigan charged Lyons with first degree murder and possession of a firearm during commission of a felony.

Lyons' trial in the Recorder's Court for the city of Detroit was scheduled to begin on March 5, 1990. The assigned judge had another jury trial that day, so Lyons' trial was postponed to the next day and transferred to the docket of

---

[2]The Honorable Denise Page Hood, United States District Court Judge for the Eastern District of Michigan.

[3]The district court ordered that, unless Michigan took action within 120 days to afford Lyons a new trial, Lyons could apply for a writ ordering his forthwith release from custody. The district court did not publish its decision in this case. On the same day the district court granted Lyons' habeas corpus petition, it granted two other petitions in similar cases. The court analyzed all three cases similarly and published only one opinion. *See Haynes v. Burke*, 115 F.Supp.2d 813 (E.D.Mich 2000). The other opinions are unpublished. *See Lyons v. Jackson*, No. 99-CV-70453-DT (E.D. Mich. Aug. 31, 2000); *Miller v. Straub*, No. 98-CV-74655-DT (E.D. Mich. Aug. 31, 2000).

Judge Roberson, Chief Judge of the Recorder's Court. The next day, March 6, Lyons pled guilty to first degree murder before Chief Judge Roberson on the advice of his defense counsel, Laurence Burgess.

At the plea hearing that day, Burgess informed the court that he recognized it was unusual to offer a plea to first degree murder, but he had discussed the matter with Lyons and Lyons' father who was present in the courtroom. Burgess stated his conviction that he would be able to convince the court to sentence Lyons as a juvenile and explained that "on the basis of that" Lyons wanted to offer a guilty plea.

The court questioned Lyons as to whether he understood the two greatly disparate sentencing possibilities available to the court in his case. Lyons affirmed his understanding that if the court decided to treat him as an adult, the court had no option but to sentence him to life in prison without parole; but if the court treated him as a juvenile, he would be committed to the state juvenile authority for a period not to exceed his twenty-first birthday.[4] Lyons also stated that he was not being coerced into his plea, had not been promised anything in return for his plea, and was aware of the various trial rights he was foregoing by pleading guilty.

The court then questioned Lyons briefly as to the factual basis of the crime. Lyons stated that he knew the victim and went to the victim's house. Lyons was carrying a revolver at the time. Lyons stated: "I went to take his wallet. There was a struggle and I got scared and shot him." The court specifically asked Lyons if he had tried to rob the victim and Lyons admitted he had.

---

[4] Under Michigan law at that time, the trial court had discretion to determine whether juveniles convicted of first degree murder should be sentenced as juveniles or as adults. *See* Mich. Comp. Laws Ann. § 769.1 (1990). The Michigan legislature amended the statute in 1996 to remove this discretion. *See* Mich. Pub. Act 1996 No. 247. All juveniles convicted of first degree murder are now mandatorily sentenced as adults. *See* Mich. Comp. Laws Ann. § 769.1(g) (2001).

the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Ibid.* Thus, even in conducting an independent review we must determine more than simply that we believe the state court was wrong in its ultimate outcome.

As the above analysis of *Strickland*, *Williams*, and *Cone* shows, we can by no means term the judgment of the Michigan Court of Appeals unreasonable. The judgment is perhaps debatable; if we ignore *Strickland's* clear requirements, we might say it was incorrect; under no circumstances can we say it was unreasonable.

affect their judgment. No. 00-2150, ___ F.3d ___, (6th Cir. 2002).

Judge Gilman's interesting mathematical analysis at page 23 begins to address the correct inquiry, but does not go far enough. The relevant question is whether the ultimate advice was a strategy within the broad bounds of professional competence. Relatedly, we ask whether the decrease in the probability of a successful outcome due to prosecutorial appeal renders credible petitioners' assertions that they would have given up their chance at a juvenile sentence before Judge Roberson. The one counsel who testified specifically thought that the chances of the state succeeding on appeal were fairly small, and we have no basis for discounting that judgment. Thus, if counsel calculated the chances of Judge Roberson's sentencing the defendants as juveniles at 90% (when the reality turned out to be 100%), and believed the chance of success on appeal by the state to be 10%, contingent on the juvenile sentencing below, then the chances of ultimate success would have shrunk from 90% to 81%. This might still look extremely good, as opposed to a very large probability of conviction of first degree murder and a sentence of life without parole.

While my assigning of values is just as speculative as Judge Gilman's, it does emphasize that the proper inquiry for effective assistance of counsel should be the overall strategy employed. It does not appear to me that we can properly say, under the AEDPA standard, that the state courts unreasonably applied *Strickland*.

Finally, I do not agree with Judge Gilman that the failure of the state court to *discuss* the prejudice prong of *Strickland* means that it did not correctly identify and apply *Strickland* as the governing federal rule. But even if we were to parse the two parts of *Strickland* in this way, we would not conduct a full *de novo* review, but rather a "independent" review as laid out in our recent case of *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). There, we said, in a similar case: "That independent review, however, is not a full, *de novo* review of

On November 30, 1990, after a sentencing hearing conducted over a number of months, Chief Judge Roberson concluded that it was appropriate to sentence Lyons as a juvenile. The court ordered that Lyons be confined to a maximum security state juvenile facility until age twenty-one.

The prosecutor appealed the juvenile sentence disposition.[5] The state court of appeals reversed and remanded for sentencing as an adult, i.e., mandatory life imprisonment without parole on the first degree murder charge. On appeal, the Michigan Supreme Court ordered a stay of further trial court proceedings, then vacated the court of appeals opinion on the ground of ineffective assistance of appellate counsel and remanded to the court of appeals for rebriefing. The court of appeals again reversed and remanded for imposition of the adult sentence. The Michigan Supreme Court denied leave to appeal.

At his resentencing before Chief Judge Roberson on January 30, 1995, Lyons orally moved to withdraw his guilty plea. Pursuant to recent Michigan Supreme Court orders in similar cases, Chief Judge Roberson immediately imposed the adult sentence of life without parole and deferred consideration of the motion until an evidentiary hearing could be scheduled.[6] Lyons later filed a written motion to withdraw his guilty plea.

---

[5] A 1988 amendment to Michigan statutory law granted Michigan prosecutors an appeal of right from "[a] final judgment or final order of the . . . recorder's court" in criminal cases. Mich. Comp. Laws Ann. § 770.12 (as amended, Mich. Pub. Act 1988 No. 66). In November 1989, the Michigan Court of Appeals published a decision in which it construed the amendment to allow prosecutors to appeal criminal sentences as of right. *People v. Reynolds*, 448 N.W.2d 774, 775 (Mich. App. 1989).

[6] *See People v. Haynes*, 527 N.W.2d 512-13 (Mich. 1994) and *People v. Miller*, 527 N.W.2d 513 (Mich. 1994) (ordering that the two juvenile defendants who moved to withdraw their guilty pleas under circumstances similar to those of Lyons be sentenced "forthwith" as adults "without prejudice to subsequent consideration of the motion to withdraw the plea of guilty").

On April 13, 1995, the trial court held an evidentiary hearing on Lyons' motion to withdraw his plea. Lyons' trial counsel, Burgess, testified. Burgess stated that he did almost entirely trial work and handled very few appellate cases. Burgess explained that he had prepared for the March 5, 1990, trial before the originally assigned judge. But upon learning that his client's case had been transferred to Chief Judge Roberson, Burgess changed tack and recommended to Lyons that he plead guilty. Although Burgess believed that he could argue an imperfect self-defense claim on Lyons' behalf at trial, which might result in Lyons being convicted of a lesser offense, Burgess's knowledge of Chief Judge Roberson's sentencing policies and general philosophy for handling juveniles convinced him that he "could get a fair hearing from Judge Roberson and . . . persuade him to sentence [Lyons] as a juvenile." Accordingly, Burgess took the "unusual" step of advising Lyons to plead guilty to first degree murder.

Burgess acknowledged that prior to March 5, he and Lyons had "discuss[ed] the trial more than anything else" and their main discussion regarding Lyons' guilty plea took place only in the few hours after the case had been reassigned to Chief Judge Roberson. Burgess realized that the sixteen-year-old Lyons was relying heavily on his advice, nonetheless he strongly recommended the plea. Burgess also discussed the situation with Lyons' father and advised him that it was in Lyons' best interest to plead guilty.[7]

Burgess testified that, in formulating his advice to Lyons, he did not consider the prosecutor's right to appeal a trial court's sentencing decision.

Q        In formulating your advice to Mr. Lyons did you take into account the fact that the Prosecution had a right to appeal Judge Roberson's decision?

---

[7]Burgess stated that Lyons' father "didn't really know anything about the law as it related to this situation. It was all new."

by the Supreme Court of the United States." *Ibid*; *Cone*, 122 S. Ct. at 1850.

The Supreme Court held in *Williams v. Taylor*, 529 U.S. 362 (2000), that "[t]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). A state-court decision can involve an unreasonable application of United States Supreme Court precedent in only two ways. First, a state court might identify the correct legal rule, but unreasonably apply it to the facts. Second, a state-court decision might unreasonably extend a Supreme Court legal precedent to a new context where it should not apply or unreasonably refuse to extend that principle to a new context where it should apply. *Id.* at 406. The Supreme Court recently reiterated that the *Williams* objective unreasonableness standard applies to the ineffective assistance of counsel setting. *Cone*, 122 S. Ct. at 1850. In *Cone*, the Court held that when a state court correctly identifies the *Strickland* standard as applicable, and makes a reasonable judgment regarding attorney performance and prejudice under the correct standard, a federal court lacks the power to grant a writ of habeas corpus contravening that determination. *Id.* at 1853-54. I would not hold that the Michigan court was objectively unreasonable in its judgment, even were I to disagree with it, as the majority does.

Judge Gilman's concurrence makes a number of interesting points that deserve a brief response. Contrary to the statement at page 21, I had thought that I did note, in the first paragraph of this dissent, and did not dispute the obvious facts in the record, that counsel did not inform their clients of the possibility of a government appeal. All of the counsel involved noted that they did not contemplate that such an appeal could occur or that it would be successful. In the parallel case before us, Miller's counsel, as well as his client, was in court when the prosecutor said that the state would appeal, and specifically testified that he felt that the chances of such an appeal succeeding (one had never been tried in Michigan, to this point), were sufficiently low that it did not

performance. *Strickland*, 466 U.S. at 689-90; *Cone*, 122 S. Ct. at 1854.

As for the prejudice element of *Strickland*, it seems clear that even with knowledge of the possibility of prosecutorial appeal, Lyons would still have pled guilty. Lyons made no attempt to withdraw his guilty plea after the prosecution appealed; rather, he argued his case on the merits before the Court of Appeals. This makes sense: even with the possibility of prosecutorial appeal, the chance to be sentenced as a juvenile was petitioner's only option short of trial. Lyons wanted a juvenile sentence, not a new trial. Lyons, through counsel, gamed the system and attempted to withdraw his guilty plea only after his juvenile sentence was rejected by the Court of Appeals. The entire point of the post-conviction strategy was to get two bites at the apple; that Lyons now argues he would have given up his first (and *ex ante* more likely) bite because of the possibility of prosecutorial appeal defies credence.

Lyons was very aware of the possible consequences of pleading guilty to first degree murder. Judge Roberson told him, before he pled, that he could possibly be sentenced as an adult, and therefore be subject to a mandatory life sentence, as a result of his guilty plea. That is exactly what happened, after the prosecutorial appeal. Lyons knew the risk, and took his chances. The fact that he did not correctly assess whether or not he actually would be sentenced as an adult is wholly irrelevant. The plea was made voluntarily and with full knowledge of the possible consequences.

Moreover, AEDPA imposes additional constraints on the ability of federal courts to grant a writ of habeas corpus. In order to meet the gatekeeper standards set forth by AEDPA, 28 U.S.C. § 2254(d), for the issuance of writs of habeas corpus, the state court adjudication of the claim that is challenged on collateral appeal must have resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

[Burgess]    No, didn't consider that at all and I certainly didn't discuss it with him. But it really didn't enter my mind.

. . . .

Q    You didn't take that into consideration in formulating your own opinion as to the best choice for him?

[Burgess]    No. It's not something that I would even think about. My reasoning was that Judge Roberson would be fair. I thought I could convince him that this young man should be sentenced as a juvenile. I never in my wildest dreams thought the Court of Appeals or a Supreme Court would reverse a judge on a discretion such as this . . . .

Q    If you had taken that into consideration, are you able to say whether it would have made a difference in your advice?

[Burgess]    . . . I can't really tell you whether or not I would have gone ahead and still advised him of this but at least he should have been aware of it and in that case I was remiss, I guess. But it's not something I even thought about. I can tell you.

Lyons J.A. at 143-45.

Lyons testified at the evidentiary hearing as well. He stated that when Burgess advised him to plead guilty, he initially "wanted to fight" the charges and go to trial. However, he eventually acceded to the plea, relying on the advice and information Burgess provided to him. Lyons then testified about Burgess's failure to inform him of the prosecutor's right to appeal and the impact such information would have had on his decision to plead guilty.

Q        Did you and Mr. Burgess discuss the fact that the Prosecutor had a right to appeal the case and if Judge Roberson sentenced you as a juvenile another court could decide to reverse that and say, no, you have to be sentenced as an adult?

[Lyons]    No, we did not.

Q        If [Burgess] advised you there was a second hurdle to get past, a second risk regarding a juvenile versus the adult sentence, would you have plead guilty to first degree murder?

            . . . .

[Lyons]    Likely I would have chosen to go to trial.

Lyons J.A. at 156.

Lyons testified that he first learned about the prosecutor's appeal when a relative read in a newspaper that Lyons' juvenile sentence had been overturned by the court of appeals.[8]    He did not recall whether he considered withdrawing his plea when the state supreme court vacated the decision of the court of appeals and remanded for rebriefing.

As to the factual basis for his earlier plea, Lyons testified that he did not go to the victim, Thomas's, residence with the intent to kill him, but rather to see about some money Thomas owed him. Lyons tried to get the money by reaching for the wallet in Thomas's pocket. A gun was on the floor. Thomas grabbed the gun first and the two of them struggled over it.

---

[8]The Michigan Court of Appeals handed down its decision reversing imposition of a juvenile sentence and remanding for imposition of an adult sentence on August 3, 1992. On August 18, 1992, Lyons wrote a letter to Chief Judge Roberson requesting new counsel: "My [appellate counsel] never came to see me and never wrote to me. My family and I learned of my sentence being changed in the news paper [sic]."

---

**DISSENT**

---

BOGGS, Circuit Judge, dissenting.  I disagree with the majority's analysis and would reverse the grant of habeas corpus.  I therefore respectfully dissent.  The Michigan Court of Appeals decided that, in this case, a failure to inform a criminal defendant, before a guilty plea, that the prosecution may have a right to appeal his being sentenced as a juvenile, does not constitute ineffective assistance of counsel.  To succeed on a claim of ineffective assistance of counsel, the petitioner must show (1) deficient performance by the attorney, and (2) prejudice.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Legitimate trial tactics are expressly excluded from the definition of deficient performance.  *Bell v. Cone*, 122 S. Ct. 1843, 1854 (2002).  To establish prejudice after having pled guilty, the pleader must show a reasonable probability that he would not have pled, had he received competent advice.  *Hill v. Lockhart*, 474 U.S. 52 (1985).  In this case, the petitioner has established neither element of *Strickland*.

At trial, Lyons faced near-certain conviction. The defenses that he would have asserted at trial were, in essence, vague hopes for jury nullification.  His defense counsel knew, however, that there was a very real hope that he could be sentenced as a juvenile if he pled guilty, because of the sentencing habits of the particular judge in the case. Counsel's performance was not deficient; indeed, the idea for the gamble sprang from defense counsel's superior and intimate knowledge of the court. Lyons's counsel took extra steps to ensure that his client's decision was well informed. He explained extensively the possible consequences of pleading to first degree murder.  He arranged for Lyons's father to be involved in the decisionmaking process.  The decision to plead was calculated, voluntary, and informed; this is precisely the sort of competent representation that is excluded from the *Strickland* definition of deficient

We are unable, of course, to determine the exact odds that Lyons believed he faced prior to pleading guilty, but the above example illustrates the significance of failing to consider the possibility of the state appealing. The fact that Lyons was aware of the maximum penalty he faced does not, therefore, negate the significance of the information that neither he nor his counsel considered. Perhaps Lyons would have pled guilty even if he had known that the trial judge's sentencing decision was not the only hurdle that he had to overcome in order to be sentenced as a juvenile. But he was entitled to be advised of *all* the risks that he faced before choosing to plead guilty and foregoing his right to a jury trial.

Because I am not confident that Lyons would have pled guilty if his counsel had informed him that his sentence could be appealed, I concur with the lead opinion in concluding that the decision of the Michigan Court of Appeals was an unreasonable application of *Strickland*. 28 U.S.C. § 2245(d)(1) (providing that a writ of habeas corpus is available for a person in state custody if the state court's adjudication of the petitioner's claim "resulted in a decision that . . . involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States"); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Lyons got the gun and shot Thomas. Lyons denied trying to rob Thomas of his wallet.[9]

The trial court determined that Lyons' guilty plea had not been voluntary, knowing and intelligent due to ineffectiveness of trial counsel. The court granted Lyons' motion to withdraw his guilty plea. The Michigan Court of Appeals granted leave to the prosecutor to appeal that order.

In a consolidated decision addressing Lyons' case along with two other similarly situated appellants, the appeals court reversed the trial court.[10] *People v. Haynes (After Remand)*, 562 N.W.2d 241 (Mich. App. 1997). The court determined that the record showed Lyons was aware, at the time he pled guilty, that he might be sentenced as an adult to a mandatory term of life imprisonment without possibility of parole. Despite this knowledge, Lyons pled guilty and did not move to withdraw his plea until after the conclusion of the appeal regarding his sentence. Therefore, the court concluded, Lyons understood the consequences of his plea, and the plea was knowingly, understandingly, and voluntarily made. *Haynes (After Remand)*, 562 N.W.2d at 250. The Michigan Supreme Court denied Lyons leave to appeal.

In August 1998, Lyons petitioned the federal district court for a writ of habeas corpus. The court conditionally granted the writ, ordering Lyons' release unless he was given a trial. The district court concluded that as a result of ineffective assistance of trial counsel Lyons had not pled guilty

---

[9] This denial is contrary to Lyons' admission during his plea colloquy with Chief Judge Roberson in 1990.

[10] Those two appellants, Cortez Miller and Kermit Haynes, also petitioned for writs of habeas corpus in federal district court. In an opinion filed contemporaneously with the instant case, we have affirmed the grant of habeas corpus relief to Miller and Haynes by the district court. *Haynes v. Burke*, ___ F.3d ___ (6th Cir. 2002).

voluntarily or knowingly.[11]   The warden appealed to this court.

## II.   DISCUSSION

### A.   Habeas Corpus Review

Provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) codified at 28 U.S.C. § 2254(d) govern our review of the state court decisions in this habeas corpus case.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

The federal district court considered Lyons' petition for habeas corpus under the "unreasonable application" prong of this statute. Neither party argues that the federal district court should have inquired whether the Michigan Court of Appeals decision was "contrary to" clearly established federal law. We proceed, therefore, under the "unreasonable application" prong of 28 U.S.C. § 2254(d)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court elucidated the terms of 28 U.S.C. § 2254(d)(1). First, the Court explained that "clearly established Federal law, as determined by the Supreme Court" refers to the Court's

---

[11]In federal district court, Lyons alleged denial of due process as a second ground for habeas corpus relief. The federal district court, having granted relief based on Lyons' ineffective assistance of counsel claim, did not address the due process argument.

F.3d 1066, 1075-76 (10th Cir. 2001) (explaining that because the state court considered only two of three requirements necessary to establish a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), a de novo standard of review applied to the third element).   I therefore believe that the dissent's application of AEDPA's "objectively unreasonable" test to the prejudice component of *Strickland* is not appropriate. *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (clarifying the meaning of an "unreasonable application" of law under 28 U.S.C. § 2254(d)(1)).

The dissent concludes that Lyons's effort to withdraw his guilty plea constituted an attempt to get "a second bite at the apple," and that Lyons entered his guilty plea voluntarily and with full knowledge of the possible sentence that he faced. I respectfully disagree.   Although Lyons did not seek to withdraw his guilty plea during the state appellate process, the record reflects that he was not advised by his attorney that the state had even appealed.   His first knowledge of the state's appeal was approximately two years later, when a relative read about the Michigan Court of Appeals's decision ordering him to be sentenced as an adult. Thus, the dissent's inference that Lyons was "gaming the system" is unwarranted under these circumstances.

With respect to whether Lyons entered his guilty plea knowingly and intelligently, I believe that the dissent underestimates the significance of a possible appeal in any calculation that Lyons or his counsel made.   Lyons might have believed that he had, say, an 80% chance of being sentenced as a juvenile by the particular trial judge before whom he pled guilty.   If he had been advised that the state could appeal, however, he might have evaluated the odds of the trial judge's determination being sustained on appeal as only 50-50.   The risk of the trial judge's sentencing decision being reversed on appeal would, in this example, reduce the ultimate likelihood of Lyons being sentenced as a juvenile from 80% to only 40%.

precisely to the extent that reasonable professional judgments support the limitations on investigation"). As the lead opinion notes, a reasonable attorney would have considered the possibility of an appeal before advising Lyons to plead guilty under the circumstances of the present case.

Finally, I believe that the dissent's consideration of the strength of the state's case against Lyons in assessing whether counsel provided competent representation, including the suggestion that his only available defense was a hope for jury nullification, focuses on the wrong issue. Lyons, in my opinion, was entitled to be advised of the possibility of an appeal before deciding whether to plead guilty, because without that knowledge his decision was not based upon all of the relevant facts. Although the Supreme Court has held that the Sixth Amendment does not require a correct assessment of the risks and benefits of pleading guilty as opposed to proceeding to trial, it recognizes that counsel must at least be aware of such risks, especially where the lack of awareness directly impacts the reasoning behind whatever advice is provided. *See McMann v. Richardson*, 397 U.S. 759, 770 (1970) ("Questions like these [relating to the risks of trial] cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be."); *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (recognizing that "a reversal for ineffective assistance would be in order" if the defendant had pled guilty solely in reliance upon his counsel's erroneous advice "that he would be eligible for parole in one-third the time he received for sentence").

I also agree with the lead opinion that if Lyons's counsel had informed Lyons that the state could appeal the trial judge's sentencing decision, a reasonable probability exists that Lyons would have proceeded to trial rather than plead guilty. In considering *Strickland*'s "prejudice" prong, we are not bound by AEDPA's deferential standard of review, because the Michigan Court of Appeals never reached the issue of prejudice when it determined that counsel's performance was not deficient. *See Gonzales v. McKune*, 247

holdings, as opposed to dicta, at the time of the relevant state court decision. *Id.* at 412. Second, the Court explained that a state court decision unreasonably applies Supreme Court precedent by either: (1) identifying the correct governing legal rule from Supreme Court precedent but unreasonably applying it to the facts; or (2) unreasonably extending a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refusing to extend that principle to a new context where it should apply. *Id.* at 407. Finally, the Court declared that the application of law must be objectively unreasonable, *id.* at 409, and not merely incorrect or erroneous.[12] *Id.* at 411.

## B.    Ineffective Assistance of Counsel

In *Hill v. Lockhart*, 474 U.S. 52 (1985) and *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out the law applicable to an ineffective assistance of counsel claim such as that made by Lyons. Both *Hill* and *Strickland*

---

[12]The Supreme Court in *Williams* acknowledged the difficulty in defining the term "unreasonable," but explained that "it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning." 529 U.S. at 410. This circuit has stated that we "rely solely on the Supreme Court's decision in *Williams* for the appropriate standard under § 2254(d)." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *accord Miller v. Francis*, 269 F.3d 609, 614 & n.1 (6th Cir. 2001). Other circuit courts that have attempted greater clarification have come to widely divergent views on the meaning of "unreasonable." Compare *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (stating that an "unreasonable application" requires "[s]ome increment of incorrectness beyond error," but "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence'") (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)); with *Kibbe v. Dubois*, 269 F.3d 26, 36 (1st Cir. 2001) ("[A] state court decision is objectively unreasonable under AEDPA only if it is so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.") (internal quotation marks removed); and with *Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir. 2000) (equating an "unreasonable application" with "clear error," i.e., "a definite and firm conviction that an error has been committed").

were clearly established federal law as determined by the Supreme Court at the time of the final Michigan Court of Appeals decision in 1997. *See Williams*, 529 U.S. at 391, 406 (referring to *Strickland* as "clearly established precedent" at the time of a Virginia state court's 1997 decision).

Under *Strickland*, a defendant claiming ineffective assistance of counsel must show both deficient performance by counsel and prejudice to the defendant resulting from that deficient performance. 466 U.S. at 687. To be deficient, counsel's performance must fall below an objective standard of reasonableness. *Id.* at 687-88; *Hill*, 474 U.S. at 58-59. In *Hill*, which applied *Strickland* to the guilty plea context, the Court explained that a defendant shows prejudice by demonstrating "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Although the Michigan Court of Appeals did not mention either *Hill* or *Strickland* by name, it did apply the law of those cases.[13] Thus, we must examine whether that court applied *Hill* and *Strickland* unreasonably.

We emphasize that *Hill* and *Strickland* state the relevant law in this case. Relying on a string of circuit court cases, the warden argues that defense counsel's failure to inform Lyons of the prosecution's right to appeal the imposition of a juvenile sentence does not comprise ineffective assistance because the prosecutor's right of appeal represents a

---

[13]The court of appeals recognized that a determination of whether Lyons' guilty plea was made knowingly and voluntarily turned on whether his counsel's advice was "within the range of competence demanded of attorneys in criminal cases." *Haynes (After Remand)*, 562 N.W.2d at 244, 250. This is the equivalent of the performance inquiry in *Strickland. See Hill*, 474 U.S. at 56, 58 (equating *Strickland*'s performance inquiry with consideration of whether counsel's advice was "within the range of competence demanded of attorneys in criminal cases"). Because the Michigan Court of Appeals determined Lyons' trial counsel performed adequately, it did not reach the question whether Lyons was prejudiced by deficient performance.

---

——————————

## CONCURRENCE

——————————

RONALD LEE GILMAN, Circuit Judge, concurring. I fully concur with the lead opinion's conclusion that Lyons's counsel was constitutionally ineffective because of the lawyer's failure to inform Lyons that the state could appeal the decision of the trial judge to sentence him as a juvenile. My reason for writing separately is to explain, in what I regard as an extremely close case, why I find the well-written dissenting opinion less persuasive than the lead opinion.

Like the lead opinion, I believe that the Michigan Court of Appeals's determination that Lyons's counsel performed competently was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). The dissent, in contrast, finds counsel's performance to be constitutionally competent, a conclusion with which I disagree for several reasons.

First, in reaching the conclusion that Lyons's counsel provided competent representation, the dissent does not address the failure of counsel to inform Lyons that the state could appeal the trial judge's sentencing decision. The dissent instead focuses solely on whether counsel's strategy was reasonable in light of his knowledge of the trial judge's sentencing tendencies, thereby overlooking the very omission that in my opinion rendered the performance of Lyons's counsel deficient.

Second, because Lyons's counsel never considered the possibility of the state appealing the trial judge's sentencing decision, his advising Lyons to plead guilty to first-degree murder cannot be considered a reasonable strategic decision to which deference should be accorded. *Strickland*, 466 U.S. at 690-91 (explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable

### III.  CONCLUSION

We conclude that Lyons received constitutionally ineffective assistance of counsel.  We further conclude that a decision to the contrary on the facts of this case is an unreasonable application of clearly established federal law. We therefore **AFFIRM** the federal district court's conditional grant of habeas corpus.

collateral, as opposed to a direct, consequence of the plea. We reject this argument on two grounds.

First, the warden's reliance on circuit court cases is improper. The AEDPA prohibits use of lower court decisions in determining whether the state court decision is contrary to, or is an unreasonable application of, clearly established federal law.  *Williams*, 529 U.S. at 412 (defining "clearly established law as determined by the Supreme Court" to mean holdings of Supreme Court decisions); *Harris*, 212 F.3d at 944 (holding district court erred in "rely[ing] on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)").

Second, the warden's argument is incompatible with Supreme Court case law.  The Court does not use a direct/collateral consequence categorization scheme to decide ineffective assistance of counsel claims.  Indeed, in *Hill*, the Supreme Court reviewed an Eighth Circuit decision holding that parole eligibility was not a "direct consequence" of a guilty plea.  *See Hill v. Lockhart*, 731 F.2d 568, 570-73 (8th Cir. 1984).  The Court noted this holding, but eschewed any such characterization in favor of directly applying *Strickland* to the plea context.  *Hill*, 474 U.S. at 55, 57-60.  As the Court stated in *Williams*:  "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." 529 U.S. at 391.

### C.  Analysis

The federal district court concluded that the Michigan Court of Appeals decision was an unreasonable application of *Hill* and *Strickland*.  We review *de novo* a district court's legal conclusions in a habeas corpus proceeding.  *Miller v. Francis*, 269 F.3d 609, 613 (6th Cir. 2001).  Where, as here, the district court's factual findings are based on a transcript from the state court proceedings and the district court makes no credibility determination, we also review those findings *de novo*.  *Id.*  We must determine whether it is an unreasonable application of *Hill* and *Strickland* to hold either:  (1) that Lyons' trial counsel provided him with objectively reasonable

assistance; or (2) that even if Lyons had been reasonably advised, he still would have pled guilty.

### 1.  Performance of Counsel

The proper measure of attorney performance is whether counsel's assistance was reasonable "under prevailing professional norms" and "considering all the circumstances." *Strickland*, 466 U.S. at 688.  We make a case-by-case examination of the evidence, *Williams*, 529 U.S. at 391, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The professional norms that guide us rest upon defense counsel's fundamental duties "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process" and "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* at 688.

The federal district court articulated the circumstances relevant to the performance inquiry in this case:

> [T]rial counsel's performance was deficient within the meaning of the *Strickland* standard where he failed to advise petitioner that the prosecutor could appeal a juvenile sentence to a Michigan appellate court with the very real possibility that a higher court would order petitioner resentenced as an adult.  Because of petitioner's young age, petitioner was particularly reliant on his attorney's advice to plead guilty to the offenses in this case.  In light of counsel's extraordinary advice to petitioner that he plead guilty to an offense which carried a mandatory sentence of life imprisonment without parole, counsel had a duty both to consider and to advise petitioner of the prosecutor's right to appeal any sentence to the Michigan appellate courts, with the possibility that petitioner's juvenile sentence would be overturned on appeal and he would then have to serve a nonparolable life sentence.

need not decide this issue here because other evidence supports Lyons' claim of prejudice.

At the March 1990 plea hearing, Burgess told the court that Lyons wished to offer a plea of guilty "on the basis of" Burgess's belief that he could convince Chief Judge Roberson to sentence Lyons as a juvenile.  Later, at the evidentiary hearing on Lyons' motion to withdraw his guilty plea, Burgess acknowledged the possibility that, had he considered the possibility that the prosecutor would  appeal a juvenile sentence, he might not have recommended that Lyons plead guilty.  Both Lyons and his counsel testified that Lyons relied heavily on the attorney's advice; thus, evidence that Burgess might  have changed his recommendation indicates that Lyons would have been more likely to demand a trial rather than plead guilty.

Lyons testified at the plea withdrawal hearing that, when first presented with Burgess's advice that he plead guilty, Lyons initially "wanted to fight" and put the government to its burden of proof.  Burgess corroborated Lyons' belief that he had defenses to the first degree murder charge.  In fact, Burgess and Lyons had been concentrating almost exclusively on trial preparation up until the date of the trial, when the case was transferred to Chief Judge Roberson.  Given this background, had Burgess advised Lyons of *all* the risks he was facing, Lyons might have pled not guilty.

To meet the prejudice requirement under *Strickland* and *Hill*, Lyons need only show a reasonable probability that he would have pled not guilty had Burgess's performance been objectively reasonable.  We conclude that Lyons' and Burgess's testimony, along with reasonable inferences from the facts and circumstances of this case, are sufficient to demonstrate not only a reasonable probability that Lyons would have decided to plead not guilty but also that a contrary conclusion is objectively unreasonable.

The warden maintains that if a defendant is aware of the maximum possible sentence he cannot be prejudiced by his counsel's failure to inform him of the prosecutor's right to appeal. We decline to adopt the warden's argument. An awareness of the sentencing range available to the trial judge is not the same as an informed understanding that a sentencing judge's decision is subject to reversal. The rule suggested by the warden would preclude courts from finding prejudice in any situation where the defendant knew the range of penalties to which he was subject.

Furthermore, the circumstances of this case illustrate the failings of the warden's argument. Lyons pled guilty in hopes of avoiding life imprisonment without parole. A reduced likelihood of being sentenced as an adult was the sole benefit of Lyons' guilty plea before Chief Judge Roberson. In reality, the risk of being sentenced as an adult came in two parts: (1) being sentenced as an adult by Chief Judge Roberson; and (2) having received a juvenile sentence from Chief Judge Roberson, being subject to a successful appeal by the prosecutor. Lyons, however, was informed by his attorney, Burgess, of only the first risk. Burgess's failure to assess all the risks and inform his client left Lyons to make the most important decision of his life without essential information. Presented with all the risks, Lyons might well have decided to plead not guilty and to take his chances at trial.

Indeed, Lyons puts forth evidence that he would have pled not guilty. At the evidentiary hearing on his plea withdrawal motion, Lyons testified that he would not have pled guilty had he known of the prosecutor's right to appeal. This testimony, though self-serving, may be enough by itself to satisfy the prejudice prong under the circumstances here. *See Magana v. Hofbauer*, 263 F.3d 542, 547 n.1 (6th Cir. 2001) (noting that, unlike the Seventh and Second Circuits, this Circuit has not explicitly adopted a requirement that in order to establish prejudice a defendant must come forward with objective evidence in addition to his post-conviction claim that he would have changed his mind about pleading guilty). We

*Lyons v. Jackson*, No. 99-CV-70453-DT, Slip Op. at 13 (E.D. Mich. Aug. 31, 2000).

Lyons' trial counsel, Burgess, brought to bear on this case his knowledge of Chief Judge Roberson's sentencing practices. Without any doubt, in this regard Lyons initially benefitted from counsel's knowledge. Furthermore, Burgess adequately informed Lyons regarding the risks as they related to Chief Judge Roberson's sentencing determination. Lyons understood that if he pled guilty Chief Judge Roberson could opt to impose either a severe adult sentence of life imprisonment or a lenient juvenile sentence.

However, Burgess acted incompetently in failing to consider the likelihood that the prosecutor would exercise his right to appeal the district court's imposition of a juvenile sentence. Any juvenile sentence imposed on Lyons would be less than five years in a juvenile facility. Given such a lenient sentence for first degree murder, it was unreasonable for Burgess not to have considered that the prosecutor could appeal and the juvenile sentence could be reversed. Yet Burgess did not factor this scenario into his advice to Lyons that pleading guilty was in Lyons' best interest.[14]

Thus, Lyons did not know that the prosecutor could appeal and that the juvenile sentence could be reversed, and, if so, Lyons would serve a life sentence without possibility of parole. Lyons was left unaware that, even if Burgess's assessment on his chances of receiving a juvenile sentence from Chief Judge Roberson were correct, this was not a one-act play in Chief Judge Roberson's courtroom.

Burgess should have considered these possibilities, informed Lyons about them, and incorporated them into his risk assessment when he advised Lyons about pleading guilty.

---

[14]In addition, Burgess entirely failed to consider that an appeals court, faced with the same two radically different sentencing possibilities as Chief Judge Roberson, might well reverse the trial court in favor of the more severe sentence.

He failed to do so.  Rather, he advised Lyons to plead guilty based solely upon his assessment of the relative risks in going to trial versus pleading guilty before Chief Judge Roberson.  As a result, Burgess misinformed Lyons regarding the likelihood he would receive an adult sentence.  Lyons was not fully apprised of the risks he faced.

The duty of defense counsel to consult is paramount when a client has to decide whether or not to waive a constitutional right, such as the right to trial.  Because the decision whether or not to plead guilty ultimately rests with the client, *see Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring) ("[o]nly such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make"), counsel must ensure that the client's decision is as informed as possible.  Failing even to consider, let alone notify the client of, a factor that could negate the entire benefit of the guilty plea is not within the range of professional norms.[15]

Lyons' age and his heavy reliance on Burgess, a reliance of which Burgess was aware, enhanced Burgess's duty to make certain that Lyons understood all the risks associated with his guilty plea.  Lyons was sixteen years old and had a seventh grade education.  His father knew nothing about the applicable law.  Burgess acknowledges that he was "placed in the role where [he] was both [Lyons'] lawyer and like a parent

---

[15]Citing the Supreme Court's recent decision in *Bell v. Cone*, 122 S.Ct. 1843 (2002), the dissent states that an attorney's legitimate trial tactics do not constitute deficient performance.  A defense counsel's failure to consider a prosecutor's right to appeal is not a tactic or strategy.  A defense counsel's failure to inform or advise the defendant regarding the state's right of appeal and the attendant chances of reversal is not a tactic or strategy.  Such omissions of legal practice and legal counseling can never be a legitimate defense tactic or strategy.

advising him."  This case epitomizes the criminal defendant's need for what the Supreme Court has called the "guiding hand of counsel at every step in the proceeding against him." *Powell v. Alabama*, 287 U.S. 45, 69 (1932).

We conclude that Lyons' trial counsel was incompetent.  It is an objectively unreasonable application of *Hill* and *Strickland* for the Michigan Court of Appeals to hold otherwise.

### 2.    *Prejudice*

To determine whether Lyons was prejudiced by his counsel's deficient performance, we ask whether there is a reasonable probability that, had he been advised of the prosecutor's right of appeal, he would not have pled guilty.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome; it is less than a preponderance of the evidence.  *Strickland*, 466 U.S. at 694.

The warden argues that Lyons could not have been prejudiced by any deficiency on the part of his trial counsel because Lyons acknowledged at the plea hearing in March 1990 that he could receive an adult sentence of life imprisonment without parole.[16]  According to the warden, "the fact that [Lyons] might not have been told that the prosecution could appeal [the juvenile] sentence he was never assured of receiving in the first place should be of no consequence."

---

[16]The warden also argues that Lyons cannot show prejudice because, after learning that the prosecution had appealed the juvenile sentence, Lyons failed to request that the case be remanded to the trial court so that he could withdraw his plea.  A defendant's decision not to abandon the appellate process in an effort to withdraw his guilty plea does not obviate prejudice to the defendant in pleading guilty as the decision to plead had already been made.  Moreover, the warden's contention is weakened because the case remained in the appeals court, not the trial court where withdrawal pleas must be made.