*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0265P (6th Cir.)
File Name: 02a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 00-2150

CORTEZ MILLER,
    *Petitioner-Appellee,*

    *v.*

DENNIS M. STRAUB, Warden,
    *Respondent-Appellant.*

Nos. 00-2150/2163

No. 00-2163

KERMIT ELDRIDGE HAYNES,
    *Petitioner-Appellee,*

    *v.*

LUELLA BURKE, Warden,
Saginaw Correctional Facility,
    *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 98-74655; 98-73406—Denise Page Hood,
District Judge.

Argued: October 26, 2001

Decided and Filed: August 8, 2002

1

Before:  BOGGS, GILMAN, and BRIGHT, Circuit Judges.[*]

––––––––––––––––––

### COUNSEL

**ARGUED:**   Thomas M. Chambers, OFFICE OF THE PROSECUTING ATTORNEY, Detroit, Michigan, for Appellants.  John R. Minock, CRAMER MINOCK, Ann Arbor, Michigan, Marla R. McCowan, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellees. **ON BRIEF:**   Thomas M. Chambers, OFFICE OF THE PROSECUTING ATTORNEY, Detroit, Michigan, for Appellants.  John R. Minock, CRAMER MINOCK, Ann Arbor, Michigan, Marla R. McCowan, Susan M. Meinberg, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellees.

BRIGHT, J., delivered the opinion of the court.  GILMAN, J. (pp. 24-28), delivered a separate concurring opinion. BOGGS, J. (pp. 29-33), delivered a separate dissenting opinion.

––––––––––––––––––

### OPINION

––––––––––––––––––

MYRON H. BRIGHT, Circuit Judge.  The wardens of two Michigan state correctional institutions appeal a federal district court's conditional grant of habeas corpus to prisoners Cortez Miller and Kermit Haynes on the ground of ineffective assistance of counsel.  Haynes and Miller are currently serving life sentences without parole after pleading guilty to first degree murder.

–––––––––––––––––––––

[*] The Honorable Myron H. Bright, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

In 1990, Miller and Haynes were fifteen and sixteen years old, respectively. Each, on the advice of his own defense counsel, pled guilty in Michigan state court to first degree murder. Their attorneys believed it likely that the trial court would impose juvenile sentences. The trial court did sentence them as juveniles. In each case, the prosecution appealed and the Michigan Court of Appeals reversed. Miller and Haynes each then received the only available adult sentence under Michigan law: life in prison without possibility of parole. Neither Miller's nor Haynes' trial counsel considered or advised their respective clients that the prosecutor could appeal the imposition of a juvenile sentence.

Miller and Haynes petitioned for writs of habeas corpus, and the federal district court[1] concluded that the failure of their defense attorneys to inform them of the prosecutor's right to appeal, particularly in light of their youth at the time of the pleas, constituted ineffective assistance of counsel. The court further concluded that a contrary determination on the facts and the law by the Michigan Court of Appeals constituted an unreasonable application of clearly established federal law as determined by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000); *Hill v. Lockhart*, 474 U.S. 52 (1985); and *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, the court separately granted Miller's and Haynes' petitions for writs of habeas corpus on the ground of ineffective assistance of counsel.[2] The wardens appeal. After a careful review of the records in the two cases, we **AFFIRM** the district court.

---

[1] The Honorable Denise Page Hood, United States District Court Judge for the Eastern District of Michigan.

[2] The court published only one opinion. *See Haynes v. Burke*, 115 F.Supp.2d 813 (E.D.Mich 2000). The other opinion is unpublished, *see Miller v. Straub*, No. 98-CV-74655-DT (E.D. Mich. Aug. 31, 2000), but the court analyzed the two cases similarly. In both cases, the district court ordered that, unless Michigan took action within 120 days to afford Miller and Haynes new trials, they could apply for writs ordering their forthwith release from custody.

## I.  BACKGROUND

Kermit Haynes and Cortez Miller are two of six youths[3] charged by the state of Michigan with the 1990 murder of Benjamin Gravel.  The state charged Haynes and Miller each with first degree felony murder, assault with intent to rob while armed, and possession of a firearm during commission of a felony.

### A.  Miller's Plea

On March 23, 1990, Miller pled guilty before Chief Judge Roberson of the Recorder's Court for the City of Detroit.  He was fifteen years old at the time.  At the plea hearing, the court questioned Miller as to whether he understood that if he pled guilty, his "only hope" to avoid mandatory life imprisonment lay in convincing the court to treat him as a juvenile.  Miller answered that he understood.  Miller's mother, who was present at the plea hearing, stated that Miller's plea had been discussed with her and that she understood that the judge might sentence her son as a juvenile or as an adult.[4]  The prosecutor advised the court that his office would request that the court sentence Miller as an adult.

The court then questioned Miller.  Miller affirmed that he was making his plea freely, understandingly, and voluntarily.

---

[3] Two of the four other boys faced trial on charges of first degree felony murder and  assault with intent to rob while armed; they were found not guilty.  Two boys pled guilty to second degree murder and assault with intent to rob while armed.  They were sentenced as juveniles.  Those juvenile sentences were upheld by the Michigan Court of Appeals. *People v. Brown*, 517 N.W.2d 806 (Mich. App. 1994).

[4] Under Michigan law at that time, the trial court had discretion to determine whether juveniles convicted of first degree murder should be sentenced as juveniles or as adults. *See* Mich. Comp. Laws Ann. § 769.1 (1990).  The Michigan legislature amended the statute in 1996 to remove this discretion.  *See* Mich. Pub. Act 1996 No. 247.  All juveniles convicted of first degree murder are now mandatorily sentenced as adults. *See* Mich. Comp. Laws Ann. § 769.1(g) (2001).

means that it did not correctly identify and apply *Strickland* as the governing federal rule.  But even if we were to parse the two parts of *Strickland* in this way, we would not conduct a full *de novo* review, but rather a "independent" review as laid out in our recent case of *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  There, we said, in a similar case:  "That independent review, however, is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Ibid.*  Thus, even in conducting an independent review we must determine more than simply that we believe the state court was wrong in its ultimate outcome.

As the above analysis of *Strickland*, *Williams*, and *Cone* shows, we can by no means term the judgment of the Michigan Court of Appeals unreasonable.  The judgment is perhaps debatable; if we ignore *Strickland's* clear requirements, we might say it was incorrect; under no circumstances can we say it was unreasonable.

possibility of a government appeal. All of the counsel involved noted that they did not contemplate that such an appeal could occur or that it would be successful. In the *Miller* case on this appeal, Miller's counsel, and client, were in court when the prosecutor said that the state would appeal, and specifically testified that he felt that the chances of such an appeal succeeding (one had never been tried in Michigan, to this point) were sufficiently low that it did not affect their judgment.

Judge Gilman's interesting mathematical analysis at page 27 begins to address the correct inquiry, but does not go far enough. The relevant question is whether the ultimate advice was a strategy within the broad bounds of professional competence. Relatedly, we ask whether the decrease in the probability of a successful outcome due to prosecutorial appeal renders credible petitioners' assertions that they would have given up their chance at a juvenile sentence before Judge Roberson. The one counsel who testified specifically thought that the chances of the state succeeding on appeal were fairly small, and we have no basis for discounting that judgment. Thus, if counsel calculated the chances of Judge Roberson's sentencing the defendants as juveniles at 90% (when the reality turned out to be 100%), and believed the chance of success on appeal by the state to be 10%, contingent on the juvenile sentencing below, then the chances of ultimate success would have shrunk from 90% to 81%. This might still look extremely good, as opposed to a very large probability of conviction of first degree murder and a sentence of life without parole.

While my assigning of values is just as speculative as Judge Gilman's, it does emphasize that the proper inquiry for effective assistance of counsel should be the overall strategy employed. It does not appear to me that we can properly say, under the AEDPA standard, that the state courts unreasonably applied *Strickland*.

Finally, I do not agree with Judge Gilman that the failure of the state court to *discuss* the prejudice prong of *Strickland*

He acknowledged an understanding of the various trial rights he was foregoing by pleading guilty. Miller affirmed his understanding that first degree murder was punishable by a maximum sentence of life imprisonment without parole. The court described the situation to Miller: "the only hope that you [have] in this plea is if I decide to treat you as a juvenile for the purpose of disposition. You heard [the prosecutor] say that they are going to want to hold a lengthy disposition hearing, do you understand that?" Miller stated that he understood, and specifically acknowledged that he was "taking that chance."

The court then questioned Miller briefly as to the factual basis for his plea. Miller stated that he was part of a group that decided to steal a car. Sometime before the crime he gave Haynes a gun knowing that Haynes planned to use it to steal a car. Miller acknowledged knowing the inherent danger to life when a car is taken at gunpoint.

Over the course of the next year, Chief Judge Roberson held several hearings on the disposition of Miller's sentence. On February 22, 1991, Miller's counsel made closing arguments to the court at the final hearing in Miller's case. At that hearing, the prosecutor announced that if the court sentenced Miller as a juvenile the prosecution would appeal.[5] On June 17, 1991, the court sentenced Miller to confinement in a juvenile institution until age twenty-one.

## B.  Haynes' Plea

On March 27, 1990, Haynes pled guilty to all charges against him, also before Chief Judge Roberson. He was

---

[5]A 1988 amendment to Michigan statutory law granted Michigan prosecutors an appeal of right from "[a] final judgment or final order of the . . . recorder's court" in criminal cases. Mich. Comp. Laws Ann. § 770.12 (as amended, Mich. Pub. Act 1988 No. 66). In November 1989, the Michigan Court of Appeals published a decision in which it construed the amendment to allow prosecutors to appeal criminal sentences as of right. *People v. Reynolds*, 448 N.W.2d 774, 775 (Mich. App. 1989).

sixteen years old at the time. At the plea hearing, his counsel, Wilfred Rice, stated that he had discussed the matter with Haynes and his family and that Haynes, with the acquiescence of his father, wanted to enter a plea of guilty as charged. Rice stated that Haynes understood that the court could sentence him as an adult or as a juvenile, and affirmed that Haynes understood that the prosecutor would attempt to convince Chief Judge Roberson that Haynes should be sentenced as an adult.

The court questioned Haynes directly about whether he understood that, if he pled guilty, "the only option you have in this case, the only escape you have in terms of mandatory life, [is] if the prosecution can't convince me to treat you as an adult." Haynes stated that he understood.

Haynes stated that he had talked to his parents about his guilty plea. He affirmed that he was not being coerced into his plea and that he made his plea freely, understandingly, and voluntarily. He also affirmed an awareness of the various trial rights he was foregoing by pleading guilty.

The court then questioned Haynes briefly about the factual basis for his plea. Haynes stated that other boys in the group pulled a tree branch into the street to force cars to stop. When the victim, Gravel, stopped his car in front of the tree branch, Haynes ran out to the car intending to steal it. He was carrying a handgun Miller had given him. As Haynes approached the car, it pulled away and he fired at the car. Haynes specifically admitted that he shot at the car as part of his attempt to steal it.

Over the course of the next year, Chief Judge Roberson held several hearings on the disposition of Haynes' sentence. On August 28, 1991, the court sentenced Haynes to confinement in a juvenile institution until age twenty-one.

Moreover, AEDPA imposes additional constraints on the ability of federal courts to grant a writ of habeas corpus. In order to meet the gatekeeper standards set forth by AEDPA, 28 U.S.C. § 2254(d), for the issuance of writs of habeas corpus, the state court adjudication of the claim that is challenged on collateral appeal must have resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Ibid*; *Cone*, 122 S. Ct. at 1850.

The Supreme Court held in *Williams v. Taylor*, 529 U.S. 362 (2000), that "[t]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). A state-court decision can involve an unreasonable application of United States Supreme Court precedent in only two ways. First, a state court might identify the correct legal rule, but unreasonably apply it to the facts. Second, a state-court decision might unreasonably extend a Supreme Court legal precedent to a new context where it should not apply or unreasonably refuse to extend that principle to a new context where it should apply. *Id.* at 406. The Supreme Court recently reiterated that the *Williams* objective unreasonableness standard applies to the ineffective assistance of counsel setting. *Cone*, 122 S. Ct. at 1850. In *Cone*, the Court held that when a state court correctly identifies the *Strickland* standard as applicable, and makes a reasonable judgment regarding attorney performance and prejudice under the correct standard, a federal court lacks the power to grant a writ of habeas corpus contravening that determination. *Id.* at 1853-54. I would not hold that the Michigan court was objectively unreasonable in its judgment, even were I to disagree with it, as the majority does.

Judge Gilman's concurrence makes a number of interesting points that deserve a brief response. Contrary to the statement at page 24, I had thought that I did note, in the first paragraph of this dissent, and did not dispute the obvious facts in the record, that counsel did not inform their clients of the

As for the prejudice element of *Strickland*, it seems clear that even with knowledge of the possibility of prosecutorial appeal, petitioners would still have pled guilty. Miller was expressly informed at his sentencing hearing, on February 22, 1991, that the prosecution intended to appeal his sentence as a juvenile. Miller and his attorney noticed and discussed the prosecution's claim that it could appeal, but felt that the prosecution would be unsuccessful on appeal: a judgment that was not obviously unreasonable given the state of the law at that time. Miller did not attempt to withdraw his guilty plea as of the sentencing hearing. Haynes, despite the fact that his co-defendant had been warned of the possibility of prosecutorial appeal as of February 22, did not move to withdraw his plea during the five months before his own sentencing on August 28, 1991. Neither petitioner attempted to withdraw his guilty plea after the prosecution actually appealed; rather, they argued their case on the merits before the Court of Appeals. This makes sense: even with the possibility of prosecutorial appeal, the chance to be sentenced as a juvenile was their only option short of trial. Petitioners wanted a juvenile sentence, not a new trial. Petitioners, through counsel, gamed the system and attempted to withdraw their guilty pleas only after their juvenile sentences were rejected by the Court of Appeals. This post-conviction strategy gave petitioners two bites at the apple; that they now argue they would have given up their first (and *ex ante* more likely) bite because of the possibility of prosecutorial appeal defies credence.

Petitioners were very aware of the possible consequences of pleading guilty to first degree murder. Judge Roberson told them, before they pled, that they could possibly be sentenced as adults, and therefore be subject to a mandatory life sentence, as a result of their guilty pleas. That is exactly what happened, after the prosecutorial appeal. Petitioners knew the risk, and took their chances. The fact that they did not correctly assess whether or not they actually would be sentenced as adults is wholly irrelevant. The plea was made voluntarily and with full knowledge of the possible consequences.

## C. Post-plea Events

After Chief Judge Roberson ordered that Miller and Haynes be sentenced as juveniles, the prosecutor appealed each sentence.[6] The state court of appeals reversed on each defendant and remanded for imposition of the adult sentence: mandatory life imprisonment without parole on the first degree murder charge. *People v. Miller*, 503 N.W.2d 89 (Mich. App. 1993); *People v. Haynes*, 502 N.W.2d 758 (Mich. App. 1993). The state supreme court denied the defendants' applications for leave to appeal those results.

On remand before Chief Judge Roberson, the defendants moved to withdraw their guilty pleas and for evidentiary hearings on those motions. Haynes and Miller each alleged that their guilty pleas had been involuntary due to ineffective assistance of trial counsel. They asserted, among other things, that their attorneys' failure to inform them that the prosecutor could appeal the imposition of a juvenile sentence constituted ineffective assistance of counsel. The court granted the motions for evidentiary hearings.

The prosecutor applied to the state court of appeals for leave to file an interlocutory appeal of the orders granting evidentiary hearings. The Michigan Court of Appeals denied the application. The Michigan Supreme Court, in lieu of granting leave to appeal, vacated the trial court's orders granting the evidentiary hearings and directed that Haynes and Miller be sentenced "forthwith" as adults "without prejudice to subsequent consideration of the motion[s] to withdraw the plea[s] of guilty." *People v. Miller*, 527 N.W.2d 513 (Mich. 1994); *People v. Haynes*, 527 N.W.2d 512-13 (Mich. 1994).

---

[6] The prosecutor appealed Haynes' sentence by right. The appeal in Miller's case was not as a matter of right because the prosecutor did not timely file the appeal. However, the Michigan Court of Appeals granted the prosecutor's application for leave to appeal.

On December 19, 1994, Chief Judge Roberson imposed sentences of life imprisonment without possibility of parole. The court subsequently held separate evidentiary hearings on Miller's and Haynes' motions to withdraw their guilty pleas.

Haynes was the only witness at his evidentiary hearing.[7] Haynes testified that he talked with his counsel, Wilfred Rice, twice in the three weeks before his guilty plea. Each visit lasted less than thirty minutes and each centered on Rice's advice that Haynes plead guilty before Chief Judge Roberson. Haynes testified that he was hesitant to plead guilty, but that Rice repeatedly told him that it was in his interest to plead before Chief Judge Roberson, where he would "have great chances of being sentenced as a juvenile."

Haynes testified that Rice never told him that, even if Chief Judge Roberson sentenced him as a juvenile, the prosecutor could still appeal that sentence and an appellate court could impose an adult sentence of life without parole. Haynes stated that he would not have pled guilty had he known this.

Q    So what is your understanding if you plead guilty and you made it through the sentencing hearing and you could convince the judge to sentence you as a juvenile, did you think there was anything after that?

[Haynes]    No. Besides the fact that I'd be going to [a juvenile facility].

. . . .

Q    Did you have any idea that the prosection [sic] had any other option besides that hearing that they had in front of the Judge?

___

[7]Haynes' trial counsel, Wilfred Rice, died before Haynes moved to withdraw his plea.

---

**DISSENT**

---

BOGGS, Circuit Judge, dissenting. I disagree with the majority's analysis and would reverse the grant of habeas corpus. I therefore respectfully dissent. The Michigan Court of Appeals decided that, in this case, a failure to inform a criminal defendant, before a guilty plea, that the prosecution may have a right to appeal his being sentenced as a juvenile, does not constitute ineffective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, the petitioner must show (1) deficient performance by the attorney, and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Legitimate trial tactics are expressly excluded from the definition of deficient performance. *Bell v. Cone*, 122 S. Ct. 1843, 1854 (2002). To establish prejudice after having pled guilty, the pleader must show a reasonable probability that he would not have pled, had he received competent advice. *Hill v. Lockhart*, 474 U.S. 52 (1985). In this case, petitioners have established neither element of *Strickland*.

At trial, petitioners faced near-certain conviction. The defenses that they would have asserted at trial were, in essence, vague hopes for jury nullification. Their defense counsel knew, however, that there was a very real hope that they could be sentenced as juveniles if they pled guilty, because of the sentencing habits of the particular judge in the case. Counsels' performance was not deficient; indeed, the idea for the gamble sprang from defense counsels' superior and intimate knowledge of the court. Their attorneys explained the ramifications of the decision to petitioners very carefully. Petitioners' parents were involved in the decisionmaking process. The decision to plead was calculated, voluntary, and informed; this is precisely the sort of competent representation that is excluded from the *Strickland* definition of deficient performance. *Strickland*, 466 U.S. at 689-90; *Cone*, 122 S. Ct. at 1854.

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

[Haynes]   No.

Haynes J.A. at 176-77.

Haynes also stated that he was innocent of first degree murder because he did not intend to harm anyone. Contrary to his testimony at the original plea hearing, Haynes denied shooting at the car. He claimed that at the plea hearing he was "under advisement" of his attorney to say that he shot at the car.

We turn to Miller's further proceedings. At the evidentiary hearing on Miller's motion to withdraw his guilty plea, Miller's trial counsel, Charles Lusby, testified. He stated that he only did trial work and never handled appeals. Lusby testified that he considered abandonment to be a possible defense for Miller because when Miller gave the gun to Haynes he was deferring to the older boys in the group. He testified that Miller "practically totally rel[ied]" on his advice, and that he convinced Miller's parents, who also relied on him, that pleading guilty was in Miller's best interest.

Lusby stated that Miller was "reluctant" to plead guilty, but that he "prevailed upon him," by telling him he likely would be sentenced as a juvenile. Lusby testified that, based upon his familiarity with the juvenile sentencing process, he believed Chief Judge Roberson would sentence Miller as a juvenile. Lusby considered his advice that Miller plead guilty to first degree murder to be "extraordinary."

Lusby admitted that his considerations in formulating this advice did not include any factor beyond what the trial court would do.

Q        In formulating your advice to Mr. Miller, did you take into account the fact [that] the prosecutor had since I believe 1988 the right to appeal a sentence?

[Lusby]    No, I did not.

Q    Did you stop to consider that, did it occur to you?

[Lusby]    That didn't occur to me at all.

Q    Did you discuss that possible risk with Mr. Miller?

[Lusby]    I discussed a lot of things with him, but that was not one of them.  It didn't occur to me that the prosecutor would do it, nor that the appellate court would reverse that decision.

Miller J.A. at 254-55.

Lusby also testified that he recalled the prosecutor stating in his closing argument at the sentencing hearing that he would appeal if Miller received a juvenile sentence.  Lusby explained that Miller "was struck" by the prosecutor's statement, but "I think I told him I didn't think [the prosecutor] would be successful."

Miller also testified.  He stated that when Lusby advised him to plead guilty, Lusby did not tell him that the prosecutor could appeal and that the court of appeals had the authority to overturn Chief Judge Roberson's decision. Miller stated that, had he known, he would not have pled guilty.

Regarding the factual basis for his plea, Miller stated that the version of the facts he gave at the plea hearing was inaccurate: "I was speaking upon the elements that my lawyer told me to speak on as far as first degree murder."  Miller stated that when Gravel was killed he was seventy-five yards from the car and running away.  Contrary to the statements he made at his plea hearing, Miller stated that there had been no plan to take a car and that he did not know what Haynes was planning to do when he gave him the gun.  He did not intend to take part in a robbery.

dissent underestimates the significance of a possible appeal in any calculation that the petitioners or their counsel made. Miller and Haynes might have believed that they had, say, an 80% chance of being sentenced as juveniles by the particular trial judge before whom they pled guilty.  If they had been advised that the state could appeal, however, they might have evaluated the odds of the trial judge's determinations being sustained on appeal as only 50-50.  The risk of the trial judge's sentencing decisions being reversed on appeal would, in this example, reduce the ultimate likelihood of Miller and Haynes being sentenced as juveniles from 80% to only 40%.

We are unable, of course, to determine the exact odds that Miller and Haynes believed that they faced prior to pleading guilty, but the above example illustrates the significance of failing to consider the possibility of the state appealing.  The fact that Miller and Haynes were aware of the maximum penalty that they faced does not, therefore, negate the significance of the information that neither they nor their counsel considered.  Perhaps Miller and Haynes would have pled guilty even if they had known that the trial judge's sentencing decisions were not the only hurdle that they had to overcome in order to be sentenced as juveniles.  But they were entitled to be advised of *all* the risks that they faced before choosing to plead guilty and foregoing their rights to jury trials.

Because I am not confident that Miller and Haynes would have pled guilty if their counsel had informed that their sentences could be appealed, I concur with the lead opinion in concluding that the decision of the Michigan Court of Appeals was an unreasonable application of *Strickland*.  28 U.S.C. § 2245(d)(1) (providing that a writ of habeas corpus is available for a person in state custody if the state court's adjudication of the petitioner's claim "resulted in a decision that . . . involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States"); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability

"prejudice" prong, we are not bound by AEDPA's deferential standard of review, because the Michigan Court of Appeals never reached the issue of prejudice when it determined that counsels' performance was not deficient. *See Gonzales v. McKune*, 247 F.3d 1066, 1075-76 (10th Cir. 2001) (explaining that because the state court considered only two of three requirements necessary to establish a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), a de novo standard of review applied to the third element). I therefore believe that the dissent's application of AEDPA's "objectively unreasonable" test to the prejudice component of *Strickland* is not appropriate. *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (clarifying the meaning of an "unreasonable application" of law under 28 U.S.C. § 2254(d)(1)).

The dissent concludes that Miller's and Haynes's efforts to withdraw their guilty pleas constituted attempts to get "a second bite at the apple," and that the petitioners entered their guilty pleas voluntarily and with full knowledge of the possible sentences that they faced. I respectfully disagree. Although Miller heard the prosecutor inform the trial judge that the state would appeal if Miller were sentenced as a juvenile, this statement came eleven months after his guilty plea, and was immediately neutralized by his counsel telling him not to worry about any appeal. This advice once more disguised the additional risk of an appeal that Miller faced. Moreover, the record supports a finding that Miller's and Haynes's counsel, not the petitioners, made the decisions to pursue the appeals for their respective clients. There is no indication that anyone informed Miller or Haynes of the possibility of withdrawing their guilty pleas prior to sentencing or during the state's appeal of their sentences. I do not believe that Miller and Haynes should be penalized for what appears to be the decisions of their counsel to pursue the state-court appeals. Thus, the dissent's inference that Miller and Haynes were "gaming the system" is, in my opinion, unwarranted under these circumstances.

With respect to whether Miller and Haynes entered their guilty pleas knowingly and intelligently, I believe that the

In October, 1995, the trial court determined that Miller's and Haynes' guilty pleas had not been voluntary, knowing, and intelligent due to ineffectiveness of trial counsel. The court granted each his motion to withdraw his guilty plea. The Michigan Court of Appeals granted leave to the prosecutor to appeal those orders.

In a consolidated decision addressing Miller's and Haynes' cases along with another similarly situated appellant, Dashawn Lyons,[8] the appeals court reversed the trial court. *People v. Haynes (After Remand)*, 562 N.W.2d 241 (Mich. App. 1997). The court determined that the record showed Miller and Haynes were aware at the time they pled guilty that they might be sentenced as adults to mandatory terms of life imprisonment without possibility of parole. In addition, Miller knew from the prosecutor's closing argument at his final sentencing disposition hearing that the prosecution could appeal if Miller received a juvenile sentence from the trial court. Despite the knowledge each had, Miller and Haynes pled guilty and did not move to withdraw their pleas until after the conclusion of the appeal regarding their sentences. Therefore, the court concluded, Miller and Haynes understood the consequences of their pleas, and the pleas were knowingly, understandingly, and voluntarily made. *Haynes (After Remand)*, 562 N.W.2d at 246, 248. The Michigan Supreme Court denied Miller and Haynes leave to appeal.

Miller and Haynes petitioned the federal district court for writs of habeas corpus. The court granted the writs, ordering that Miller and Haynes be released unless they were given trials. The district court concluded that Miller's and Haynes' trial counsel were ineffective in failing to advise them of the

---

[8]Lyons also petitioned for a writ of habeas corpus in federal district court. In an opinion filed contemporaneously with this opinion, we have affirmed the grant of habeas corpus relief to Lyons by the district court. *See Lyons v. Jackson*, ___ F.3d ___ (6th Cir. 2002).

prosecutor's right to appeal.[9]   As a result, Miller and Haynes had not pled guilty voluntarily or knowingly.  The wardens appealed to this court.

## II.  DISCUSSION

### A.  Habeas Corpus Review

Provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) codified at 28 U.S.C. § 2254(d) govern our review of the state court decisions in this habeas corpus case.

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

28 U.S.C. § 2254(d)(1).

The federal district court considered Miller's and Haynes' petitions for habeas corpus under the "unreasonable application" prong of this statute.  None of the parties argue that the federal district court  should have inquired whether the Michigan Court of Appeals decision was "contrary to" clearly established federal law.  We proceed, therefore, under the  "unreasonable  application"  prong  of  28  U.S.C. § 2254(d)(1).

---

[9]In  federal  district  court,  Haynes  alleged  other  grounds  for ineffectiveness of counsel.  That court, having granted relief based on Haynes' counsel's failure to advise him of the prosecutor's right to appeal, did not address those claims.  *Haynes v. Burke*, 115 F.Supp.2d 813, 819-20 (E.D. Mich. 2000).

and  facts  relevant  to  plausible  options  are  virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").  As the lead opinion notes, a reasonable attorney would have considered the possibility of an appeal before advising Miller and Haynes to plead guilty under the circumstances of the present case.

Finally, I believe that the dissent's consideration of the strength of the state's case against the petitioners in assessing whether counsel provided competent representation, including the suggestion that their only available defense was a hope for jury  nullification,  focuses  on  the  wrong  issue.    The petitioners, in my opinion, were entitled to be advised of the possibility of an appeal before deciding whether to plead guilty, because without that knowledge their decisions were not  based  upon  all  of  the  relevant  facts.    Although  the Supreme Court has held that the Sixth Amendment does not require  a  correct  assessment  of  the  risks  and  benefits  of pleading guilty as opposed to proceeding to trial, it recognizes that counsel must at least be aware of such risks, especially where the lack of awareness directly impacts the reasoning behind  whatever  advice  is  provided.    *See McMann v. Richardson*, 397 U.S. 759, 770 (1970) ("Questions like these [relating  to  the  risks  of  trial]  cannot  be  answered  with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be."); *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (recognizing that "a reversal for ineffective assistance would be in order" if the defendant had pled guilty solely in reliance upon  his  counsel's  erroneous  advice  "that  he  would  be eligible  for  parole  in  one-third  the  time  he  received  for sentence").

I  also  agree  with  the  lead  opinion  that  if  counsel  had informed Miller and Haynes that the state could appeal the trial judge's sentencing decisions, a reasonable probability exists that both petitioners would have proceeded to trial rather  than  plead  guilty.    In  considering  *Strickland*'s

---

## CONCURRENCE

---

RONALD LEE GILMAN, Circuit Judge, concurring. I fully concur with the lead opinion's conclusion that Miller's and Haynes's counsel were constitutionally ineffective because of their lawyers' failure to inform the petitioners that the state could appeal the decision of the trial judge to sentence them as juveniles. My reason for writing separately is to explain, in what I regard as an extremely close case, why I find the well-written dissenting opinion less persuasive than the lead opinion.

Like the lead opinion, I believe that the Michigan Court of Appeals's determination that Miller's and Haynes's counsel performed competently was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). The dissent, in contrast, finds counsels' performance to be constitutionally competent, a conclusion with which I disagree for several reasons.

First, in reaching the conclusion that the petitioners' counsel provided competent representation, the dissent does not address the failure of counsel to inform Miller and Haynes that the state could appeal the trial judge's sentencing decisions. The dissent instead focuses solely on whether counsels' strategy was reasonable in light of their knowledge of the trial judge's sentencing tendencies, thereby overlooking the very omission that in my opinion rendered the performance of the petitioners' counsel deficient.

Second, because Miller's and Haynes's counsel never considered the possibility of the state appealing the trial judge's sentencing decisions, their advising the petitioners to plead guilty to first-degree murder cannot be considered a reasonable strategic decision to which deference should be accorded. *Strickland*, 466 U.S. at 690-91 (explaining that "strategic choices made after thorough investigation of law

---

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court elucidated the terms of 28 U.S.C. § 2254(d)(1). First, the Court explained that "clearly established Federal law, as determined by the Supreme Court" refers to the Court's holdings, as opposed to dicta, at the time of the relevant state court decision. *Id.* at 412. Second, the Court explained that a state court decision unreasonably applies Supreme Court precedent by either: (1) identifying the correct governing legal rule from Supreme Court precedent but unreasonably applying it to the facts; or (2) unreasonably extending a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refusing to extend that principle to a new context where it should apply. *Id.* at 407. Finally, the Court declared that the application of law must be objectively unreasonable, *id.* at 409, and not merely incorrect or erroneous.[10] *Id.* at 411.

---

[10]The Supreme Court in *Williams* acknowledged the difficulty in defining the term "unreasonable," but explained that "it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning." 529 U.S. at 410. This circuit has stated that we "rely solely on the Supreme Court's decision in *Williams* for the appropriate standard under § 2254(d)." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *accord Miller v. Francis*, 269 F.3d 609, 614 & n.1 (6th Cir. 2001). Other circuit courts that have attempted greater clarification have come to widely divergent views on the meaning of "unreasonable." Compare *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (stating that an "unreasonable application" requires "[s]ome increment of incorrectness beyond error," but "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence'") (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)); with *Kibbe v. Dubois*, 269 F.3d 26, 36 (1st Cir. 2001) ("[A] state court decision is objectively unreasonable under AEDPA only if it is so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.") (internal quotation marks removed); and with *Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir. 2000) (equating an "unreasonable application" with "clear error," i.e., "a definite and firm conviction that an error has been committed").

## B.   Ineffective Assistance of Counsel

In *Hill v. Lockhart*, 474 U.S. 52 (1985) and *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set out the law applicable to an ineffective assistance of counsel claim such as that made by Miller and Haynes. Both *Hill* and *Strickland* were clearly established federal law as determined by the Supreme Court at the time of the final Michigan Court of Appeals decision in 1997. *See Williams*, 529 U.S. at 391, 406 (referring to *Strickland* as "clearly established precedent" at the time of a Virginia state court's 1997 decision).

Under *Strickland*, a defendant claiming ineffective assistance of counsel must show both deficient performance by counsel and prejudice to the defendant resulting from that deficient performance.  466 U.S. at 687.  To be deficient, counsel's performance must fall below an objective standard of reasonableness. *Id.* at 687-88; *Hill*, 474 U.S. at 58-59. In *Hill*, which applied *Strickland* to the guilty plea context, the Court explained that a defendant shows prejudice by demonstrating "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Although the Michigan Court of Appeals did not mention either *Hill* or *Strickland* by name, it did apply the law of those cases.[11]  Thus, we must examine whether that court applied *Hill* and *Strickland* unreasonably.

---

[11]The court of appeals recognized that a determination of whether Miller's and Haynes' guilty pleas were made knowingly and voluntarily turned on whether their attorneys' advice was "within the range of competence demanded of attorneys in criminal cases." *Haynes (After Remand)*, 562 N.W.2d at 244, 250. This is the equivalent of the performance inquiry in *Strickland*. *See Hill*, 474 U.S. at 56, 58 (equating *Strickland*'s performance inquiry with consideration of whether counsel's advice was "within the range of competence demanded of attorneys in criminal cases"). Because the Michigan Court of Appeals determined Miller's and Haynes' trial counsel performed adequately, it did not reach the questions whether Miller and Haynes each were prejudiced by deficient performance.

## III.  CONCLUSION

We conclude that Miller and Haynes each received constitutionally ineffective assistance of counsel. We further conclude that decisions to the contrary on the facts of each case are unreasonable applications of clearly established federal law.  We therefore **AFFIRM** the federal district court's conditional grant of habeas corpus separately for Miller and Haynes.

Miller puts forth additional evidence that, with competent assistance, he would have pled not guilty. Lusby testified that Miller pled guilty only reluctantly. The fact that Lusby had to prevail upon Miller to plead guilty tends to corroborate Miller's testimony that he would have pled not guilty had he known of the prosecutor's right to appeal. Lusby convinced Miller to plead, but did so without advising him of the full risk he faced of receiving a life sentence. This evidence shows that Miller would have been less likely to plead guilty had he been competently advised of all the risks.

Warden Straub argues that Miller actually knew before he was sentenced that the prosecutor could appeal. The prosecutor did state in his closing argument at Miller's final sentencing hearing that he would appeal if Miller was sentenced as a juvenile. However, the die had already been cast. Miller's final sentencing hearing came eleven months after his plea had been accepted and Lusby dismissed the concerns Miller expressed to him about the prosecutor's statement because Lusby considered the prosecutor unlikely to succeed. Miller's failure suddenly to reject his counsel's advice, upon which he relied heavily, and press to withdraw his guilty plea a year after he made it does not show Miller was unprejudiced by Lusby's incompetence.

We conclude that Miller's and Lusby's testimony, along with reasonable inferences from the facts and circumstances of this case, are sufficient to demonstrate not only a reasonable probability that Miller would have decided to plead not guilty but also that a contrary conclusion is objectively unreasonable.

The untimely death of Haynes' trial counsel prevents him from offering any corroborative testimony that Haynes would have pled not guilty. In these special circumstances, we conclude that Haynes' claim and the absence of any evidence or tenable argument to the contrary is sufficient to establish not only a reasonable likelihood that he would have pled not guilty, but also that any contrary conclusion is objectively unreasonable.

We emphasize that *Hill* and *Strickland* state the relevant law in this case. Relying on a string of circuit court cases, the wardens argue that defense counsels' failure to inform Miller and Haynes of the prosecution's right to appeal the imposition of a juvenile sentence does not comprise ineffective assistance because the prosecutor's right of appeal represents a collateral, as opposed to a direct, consequence of the plea. We reject this argument on two grounds.

First, the wardens' reliance on circuit court cases is improper. The AEDPA prohibits use of lower court decisions in determining whether the state court decision is contrary to, or is an unreasonable application of, clearly established federal law. *Williams*, 529 U.S. at 412 (defining "clearly established law as determined by the Supreme Court" to mean holdings of Supreme Court decisions); *Harris*, 212 F.3d at 944 (holding district court erred in "rely[ing] on authority other than that of the Supreme Court of the United States in its analysis under § 2254(d)").

Second, the wardens' argument is incompatible with Supreme Court case law. The Court does not use a direct/collateral consequence categorization scheme to decide ineffective assistance of counsel claims. Indeed, in *Hill*, the Supreme Court reviewed an Eighth Circuit decision holding that parole eligibility was not a "direct consequence" of a guilty plea. *See Hill v. Lockhart*, 731 F.2d 568, 570-73 (8th Cir. 1984). The Court noted this holding, but eschewed any such characterization in favor of directly applying *Strickland* to the plea context. *Hill*, 474 U.S. at 55, 57-60. As the Court stated in *Williams*: "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." 529 U.S. at 391.

## C.  Analysis

The federal district court concluded that the Michigan Court of Appeals decision was an unreasonable application of *Hill* and *Strickland*. We review *de novo* a district court's legal conclusions in a habeas corpus proceeding. *Miller v.*

*Francis*, 269 F.3d 609, 613 (6th Cir. 2001). Where, as here, the district court's factual findings are based on a transcript from the state court proceedings and the district court makes no credibility determination, we also review those findings *de novo. Id.* We must determine whether it is an unreasonable application of *Hill* and *Strickland* to hold either: (1) that the petitioners' trial counsel provided them with objectively reasonable assistance; or (2) that even if the petitioners had been reasonably advised, they still would have pled guilty.

### 1.  *Performance of Counsel*

The proper measure of attorney performance is whether counsel's assistance was reasonable "under prevailing professional norms" and "considering all the circumstances." *Strickland*, 466 U.S. at 688. We make a case-by-case examination of the evidence, *Williams*, 529 U.S. at 391, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The professional norms that guide us rest upon defense counsel's fundamental duties "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process" and "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* at 688.

The federal district court articulated the circumstances relevant to the performance inquiry in this case:

> [T]rial counsel's performance was deficient within the meaning of the *Strickland* standard where he failed to advise petitioner that the prosecutor could appeal a juvenile sentence to a Michigan appellate court with the very real possibility that a higher court would order petitioner resentenced as an adult. Because of petitioner's young age, petitioner was particularly reliant on his attorney's advice to plead guilty to the offenses in this case. In light of what amounted to extraordinary

[Miller and Haynes] might not have been told that the prosecution could appeal [the juvenile] sentence [they were] never assured of receiving in the first place should be of no consequence."

The wardens maintain that if a defendant is aware of the maximum possible sentence he cannot be prejudiced by his counsel's failure to inform him of the prosecutor's right to appeal. We decline to adopt the wardens' argument. An awareness of the sentencing range available to the trial judge is not the same as an informed understanding that a sentencing judge's decision is subject to reversal. The rule suggested by the warden would preclude courts from finding prejudice in any situation where the defendant knew the range of penalties to which he was subject.

Furthermore, the circumstances of these cases illustrate the failings of the wardens' argument. Miller and Haynes pled guilty in hopes of avoiding life imprisonment without parole. A reduced likelihood of being sentenced as an adult was the sole benefit of their guilty pleas before Chief Judge Roberson. In reality, the risk of being sentenced as an adult came in two parts: (1) being sentenced as an adult by Chief Judge Roberson; and (2) having received a juvenile sentence from Chief Judge Roberson, being subject to a successful appeal by the prosecutor. Miller and Haynes, however, each received from his attorney information of only the first risk. Defense counsel's failure to assess all the risks and inform Miller and Haynes left each of them to make the most important decision of his life without essential information. Presented with all the risks, Haynes and Miller might well have decided to plead not guilty and to take their chances at trial. To meet the prejudice requirement under *Hill* and *Strickland*, Haynes and Miller need only show a reasonable probability that they would have pled not guilty had their attorneys competently advised them.

---

testified that his appellate counsel advised him there were other steps to be taken before they should consider withdrawing the plea.

### 2.   *Prejudice*

To determine whether the petitioners were prejudiced by their attorneys' deficient performance, we ask whether there is a reasonable probability that, had they been advised of the prosecutor's right of appeal, they would have pled not guilty. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome; it is less than a preponderance of the evidence. *Strickland*, 466 U.S. at 694.

Both Miller and Haynes testified similarly at the evidentiary hearings on their plea withdrawal motions that each was initially hesitant to plead guilty, and that each would have pled not guilty had each known the prosecutor could appeal. This testimony, though self-serving, may be enough by itself to satisfy the prejudice prong under the circumstances here. *See Magana v. Hofbauer*, 263 F.3d 542, 547 n.1 (6th Cir. 2001) (noting that, unlike the Seventh and Second Circuits, this Circuit has not explicitly adopted a requirement that in order to establish prejudice a defendant must come forward with objective evidence in addition to his post-conviction claim that he would have changed his mind about pleading guilty). The circumstances of these cases do not require that we resolve this issue today.

The wardens argue that Miller and Haynes could not have been prejudiced by any deficiency on the part of their trial counsel because they acknowledged at their March 1990 plea hearings that they could be sentenced to life imprisonment without parole.[15] According to the wardens, "the fact that

---

[15]Warden Burke also argues that Haynes cannot show prejudice because, after learning that the prosecution had appealed his juvenile sentence, Haynes failed to request that the case be remanded to the trial court so that he could withdraw his plea. A defendant's decision not to abandon the appellate process in an effort to withdraw his guilty plea does not obviate prejudice to the defendant in pleading guilty as the decision to plead had already been made. Moreover, the warden's contention is weakened because the case remained in the appeals court, not the trial court where withdrawal pleas must be made. Additionally, Haynes

---

advice by counsel that petitioner plead guilty to an offense which carried a mandatory sentence of life imprisonment without parole, counsel had a duty both to consider and to advise petitioner of the prosecutor's right to appeal any sentence to the Michigan appellate courts, with the possibility that petitioner's juvenile sentence would be overturned on appeal and he would then have to serve a nonparolable life sentence.

*Haynes v. Burke*, 115 F.Supp.2d 813, 819 (E.D. Mich. 2000).[12]

Miller's trial counsel, Lusby, brought to bear on this case his knowledge of the juvenile sentencing process and Chief Judge Roberson's sentencing practices. There is no doubt that in this regard Miller initially benefitted from Lusby's advice. Furthermore, Lusby adequately informed Miller regarding the risk related to Chief Judge Roberson's sentencing determination. Miller understood that if he pled guilty Chief Judge Roberson could opt to impose either a severe adult sentence of life imprisonment or a lenient juvenile sentence.

However, Lusby acted incompetently in failing to consider the likelihood that the prosecutor would exercise his right to appeal the district court's imposition of a juvenile sentence. Any juvenile sentence imposed on Miller would be less than six years in a juvenile facility. Given such a lenient sentence for first degree murder, it was unreasonable for Lusby not to have considered that the prosecutor could appeal and the juvenile sentence could be reversed. Yet Lusby did not factor this scenario into his advice to Miller that pleading guilty was in Miller's best interest.[13] Thus, Miller did not know that the

---

[12]The federal district court's opinion in Miller's case contains almost precisely the same wording. *Miller v. Straub*, No. 98-CV-74655-DT, Slip Op. at 13 (E.D. Mich. Aug. 31, 2000).

[13]In addition, Lusby entirely failed to consider that an appeals court, faced with the same two radically different sentencing possibilities as Chief Judge Roberson, might well reverse the trial court in favor of the

prosecutor could appeal and that the juvenile sentence could be reversed, and, if so, Miller would serve a life sentence without possibility of parole.

Lusby should have considered these possibilities, informed Miller about them, and incorporated them into his risk assessment when he advised Miller about pleading guilty. He failed to do so. Rather, he advised Miller to plead guilty based solely upon his assessment of the relative risks in going to trial versus pleading guilty before Chief Judge Roberson. As a result, Lusby misinformed Miller regarding the likelihood he would receive an adult sentence. Miller was not fully apprised of the risks he faced.

The duty of defense counsel to consult is paramount when a client has to decide whether or not to waive a constitutional right, such as the right to trial. Because the decision whether or not to plead guilty ultimately rests with the client, *see Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring) ("[o]nly such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make"), counsel must ensure that the client's decision is as informed as possible. Failing even to consider, let alone notify the client of, a factor that could negate the entire benefit of the guilty plea is not within the range of professional norms.[14]

---

more severe sentence.

[14] Citing the Supreme Court's recent decision in *Bell v. Cone*, 122 S.Ct. 1843 (2002), the dissent states that an attorney's legitimate trial tactics do not constitute deficient performance. A defense counsel's failure to consider a prosecutor's right to appeal is not a tactic or strategy. A defense counsel's failure to inform or advise the defendant regarding the state's right of appeal and the attendant chances of reversal is not a tactic or strategy. Such omissions of legal practice and legal counseling

Miller's age and his heavy reliance on Lusby, a reliance Lusby acknowledged was "practically total[]," enhanced Lusby's duty to make certain that Miller understood all the risks associated with his guilty plea. Miller was fifteen years old and a year behind in school. His parents, according to Lusby, were themselves reliant on Lusby for advice. This case epitomizes the criminal defendant's need for what the Supreme Court has called the "guiding hand of counsel at every step in the proceeding against him." *Powell v. Alabama*, 287 U.S. 45, 69 (1932).

We conclude that Miller's trial counsel was incompetent. It is an objectively unreasonable application of *Hill* and *Strickland* for the Michigan Court of Appeals to hold otherwise.

Haynes testified that his trial counsel, Rice, similarly failed to inform him of the prosecutor's right to appeal the trial court's imposition of a juvenile sentence. Due to Rice's death, Haynes was unable to offer any testimony which might corroborate this assertion. The Michigan Court of Appeals assumed that Haynes' defense counsel did not inform him that the prosecutor could appeal the trial court's sentencing decision. *Haynes (After Remand)*, 562 N.W.2d at 245 n.1. The federal district court accepted that assumption. *Haynes v. Burke*, 115 F.Supp.2d at 818. In her appeal to this court, Warden Burke does not challenge the fact that Rice did not inform Haynes of the prosecutor's right to appeal. There being nothing in the record to contradict the Michigan court's assumption, we adopt it.

With this assumption made, the reasoning from Miller's case applies. Like Miller, Haynes should have been fully apprised of the risks he faced, but was not. We conclude that Haynes' trial counsel was incompetent and that it is an objectively unreasonable application of *Hill* and *Strickland* for the Michigan Court of Appeals to hold otherwise.

---

can never be a legitimate defense tactic or strategy.