**Hector GARNICA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 1:03–CV–22.**
**No. 1:01–CR–61.**

United States District Court,
E.D. Tennessee,
Southern Division.

March 10, 2005.

Hector Garnica, Lexington, KY, pro se.

Paul W. Laymon, U.S. Department of Justice Office of U.S. Attorney, Chattanooga, TN, for Defendant.

## MEMORANDUM

COLLIER, District Judge.

This matter comes before the Court on the motion of *pro se* petitioner Hector Garnica ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File Nos. 1, 3). Petitioner filed a memorandum in support of his petition (Court File No. 4) and, pursuant to the Court's Order (Court File No. 5), the United States filed a response (Court File No. 7) to which Petitioner filed a reply (Court File No. 9). The Court finds the materials thus submitted, together with the complete record of the underlying criminal case,[1] conclusively show Petitioner is not entitled to relief on the claims asserted in his petition. Accordingly, the Court will decide those matters without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir.1993), *cert. denied*, 508 U.S. 943, 113 S.Ct. 2424, 124 L.Ed.2d 645 (1993), and will **DENY** Petitioner's motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March, 2001, agents with the Tennessee Bureau of Investigation ("TBI") learned from a Confidential Informant ("CI") that Charlie Rose was selling large quantities of methamphetamine. The CI made arrangements for a controlled buy from Rose of one pound of methamphetamine, to be delivered in a residence in the town of Ten Mile in Meigs County, Tennessee. TBI agents monitored the exchange. Rose arrived at the residence

---

1. In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:01–CR–61, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

with another man, later identified as Ralph Vasquez. The CI discussed a future transaction with Rose and Vasquez, and Vasquez told the CI he and Rose could deliver an additional two pounds of methamphetamine for $20,000. Rose exchanged the pound of methamphetamine for $11,500 and TBI agents moved into the residence and arrested Rose and Vasquez (Presentence Report ("PSR") ¶¶ 8–9).

During questioning after his arrest, Rose told police his supplier was a man named Eric Estrada, who lived in Dalton, Georgia, and had "fronted" him the pound of methamphetamine, expecting payment from the proceeds of the sale. Rose also told police Vasquez was Estrada's associate who had ridden along on the trip to ensure Estrada received his share of money from the sale. Vasquez corroborated Rose's story. At the TBI's request, Vasquez called Estrada (with the TBI monitoring the call) and told Estrada that Vasquez and Rose had been arrested on a noise violation, for playing music too loudly in their car. When Estrada demanded to know where his money was, Vasquez told him they had hidden it in the car before being arrested (*Id.* at ¶ 10).

The Georgia Bureau of Investigation ("GBI") also had been investigating Petitioner and Estrada during March, 2001, and monitored all of the following transactions. On March 8, 2001, a Georgia CI purchased one ounce of methamphetamine from Melinda Knight in Dalton, Georgia then purchased another half ounce from Knight and arranged a half-pound purchase on March 9, 2001. Because Knight could not supply that much methamphetamine on her own, she introduced the Georgia CI to her supplier, Estrada. On March 12, 2001, Estrada sold the half pound of methamphetamine to the Georgia CI, who then purchased another two ounces of methamphetamine from Knight on March 15, 2001. On March 16, 2001, Estrada and Braulio Garnica delivered one pound of methamphetamine to the Georgia CI. On March 18, 2001, the Georgia CI and Estrada arranged a transaction for two pounds of methamphetamine (*Id.* at ¶¶ 11–12).

Vasquez eventually made bail in Tennessee and went to Dalton to meet with Estrada on March 21, 2001. While Vasquez was meeting with Estrada, Petitioner arrived with two pounds of methamphetamine for Estrada. Braulio Garnica delivered the two pounds of methamphetamine Petitioner had supplied to the Georgia CI on March 24, 2001 at a hotel in Dalton for a purchase price of $19,000. Petitioner drove to the hotel and monitored the transaction from his car while parked outside (*Id.* at ¶¶ 10, 13; see also Crim. Court File No. 110, Jan. 4, 2002 Sentencing Hearing Transcript, p. 9). Petitioner and others were arrested at the conclusion of the two-pound transaction by GBI agents. According to the investigation, Petitioner was Estrada's main supplier (PSR at ¶ 14).

United States Magistrate Judge John Y. Powers held a detention hearing on June 7, 2001, and Petitioner was detained without bail pending trial (*See* Crim. Court File No. 65). On September 6, 2001, Petitioner pleaded guilty pursuant to a plea agreement to the first count of the superseding indictment charging him with a violation of 21 U.S.C. § 846, conspiring to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(a), knowingly, intentionally, and without authority distributing 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance (*See* Crim. Court File No. 35, Superseding Indictment; Crim. Court File No. 83, Plea Agreement).

Before sentencing, Petitioner, through counsel, objected to the calculation of his sentence in the PSR, particularly its en-

hancement based on possession of a weapon by coconspirator Estrada and its lack of a downward adjustment for the Safety Valve, United States Sentencing Guideline § 5C1.2. On January 4, 2002, after a sentencing hearing, the Court sentenced Petitioner to a 108–month term of imprisonment (Crim. Court File No. 94) and the criminal judgment was entered on April 23, 2002 (Crim. Court File No. 109). Petitioner's counsel at the sentencing hearing argued both of Petitioner's objections to the PSR, and was successful in obtaining a downward adjustment for the Safety Valve. Petitioner was represented by his retained counsel, William Rucker, at all stages of the proceedings and, since he was not proficient in English, also was provided with an interpreter at all stages of the proceedings. Petitioner did not appeal his conviction or sentence.

On January 3, 2003, Petitioner filed the present motion to vacate, set aside, or correct his conviction pursuant to 28 U.S.C. § 2255. The Petition was timely filed within the statutory one-year limitation period. 28 U.S.C. § 2255(1).[2]

## II. *STANDARD OF REVIEW*

■ Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack ....

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1, 5 (6th Cir.1977); *Mayes v. United States,* 93 F.Supp.2d 882, 886 (E.D.Tenn.2000).

■ Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson,* 507 U.S. 619, 637–38, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993); *Watson v. United States,* 165 F.3d 486, 488 (6th Cir.1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States,* 209 F.3d 828, 831 (6th Cir. 2000), *cert. denied,* 531 U.S. 884, 121 S.Ct. 200, 148 L.Ed.2d 140 (2000); *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a thresh-

---

**2.** 28 U.S.C. § 2255, provides, in part:
A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

old standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States,* 268 F.3d 346, 351 (6th Cir.2001).

## III. *DISCUSSION*

Petitioner asserts essentially four grounds upon which he argues the Court should vacate, set aside, or correct his sentence. Petitioner contends (1) the Government and Petitioner's counsel deprived Petitioner of his right to a trial by jury by coercing him into entering a guilty plea; (2) Petitioner was denied effective assistance of counsel; (3) the Government breached the plea agreement by failing to seek a downward departure during sentencing for his substantial assistance; and (4) the superseding indictment was not submitted to a jury or proven beyond a reasonable doubt, and violates Double Jeopardy (*see* Court File Nos. 1, 3, 4).

█ With the exception of a claim of ineffective assistance of counsel, a defendant procedurally defaults a claim by failing to raise it on direct review. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998). Petitioner did not appeal his conviction or sentence and only his second claim contains any reference to alleged ineffective performance on the part of his attorney. A procedurally defaulted claim may only be raised in a § 2255 motion if the petitioner can first demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Id.* at 622, 118 S.Ct. at 1611; *Peveler v. United States,* 269 F.3d 693, 698–700 (6th Cir.2001). Petitioner has not attempted to demonstrate his "actual innocence."

As a showing of cause to excuse his failure to raise any of his claims other than ineffective assistance of counsel in a direct appeal, Petitioner alleges Mr. Rucker "stated there was no Reason for Appeal and therefore, would not Appeal conviction" (Court File No. 1 at 3). Petitioner also alleges Mr. Rucker "refus[ed] to appeal the sentence, saying the violation of Defendant's Constitutional rights were not an issue for appeal..." (Court File No. 4 at 3–4). Petitioner is effectively arguing Mr. Rucker's ineffective assistance of counsel was the reason he failed to directly appeal these errors.

█ Failure to file an appeal in derogation of a defendant's express request is a *per se* violation of the Sixth Amendment right to effective assistance of counsel. *See Roe v. Flores–Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000); *Edwards v. United States,* 246 F.Supp.2d 911, 914 (E.D.Tenn.2003). Here, however, Petitioner has not alleged he explicitly requested an appeal; he has not even alleged he asked whether an appeal would likely be successful, he has merely alleged his defense counsel "would not Appeal" and "refused to appeal" his conviction and sentence (Court File No. 1 at 3; Court File No. 4 at 3–4). The Court at the conclusion of the sentencing hearing clearly informed Petitioner of his right to appeal his sentence, including the time within which a notice of appeal must be filed (Crim. Court File No. 110, Jan. 4, 2002, Sentencing Transcript, pp. 64). Mr. Rucker's statements, as alleged by Petitioner, necessarily recognize Petitioner's ability and right to appeal and implies Mr. Rucker had at least contemplated the possibility of appealing, but concluded no meritorious grounds existed. Petitioner does not allege he instructed Mr. Rucker to file an appeal, nor does he recite any specific facts about conversations he had with

counsel during which an appeal was discussed, thus his allegations have not risen to the level necessitating an evidentiary hearing on this issue. Failure to file an appeal in these circumstances, where Petitioner did not request an appeal, does not constitute ineffective assistance of counsel. *See Ludwig v. United States,* 162 F.3d 456, 459 (6th Cir.1998) ("the Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request"). Therefore, Petitioner has not demonstrated ineffective assistance of counsel was "cause" for his not filing an appeal including the present claims, and he has procedurally defaulted on them.

Nevertheless, the Court will proceed to address the merits of Petitioner's claims in full because Petitioner would not be entitled to relief on his claims other than ineffective assistance of counsel even if they had not been procedurally defaulted.

### A. Involuntary Plea

 Petitioner first essentially argues his guilty plea was not voluntary because it was entered after he was threatened with a 15- to 20–year sentence by Assistant United States Attorney Paul Laymon at his detention hearing, and also threatened with the same sentence by his counsel, Mr. Rucker. During the detention hearing on June 7, 2001, the following exchange took place between Magistrate Judge Powers and Mr. Laymon:

THE COURT: If convicted of the offenses with which he is currently charged in this Indictment, the Superseding Indictment of May the 22nd, 2001, what sentence does Mr. Hector Garnica face?

MR. LAYMON: Judge, based on the drug amounts in the case, I believe it would be a minimum mandatory ten years incarceration to a maximum of life.

THE COURT: From a practical standpoint, with your experience in such cases, what is the likely sentence, if convicted that he will face?

MR. LAYMON: Well, Judge, if he were to go to trial and not get acceptance of responsibility or any of those more traditional federal things, he's probably looking at between 15 to 20 years.

THE COURT: How much?

MR. LAYMON: I would say between 15 and 20 years.

THE COURT: 15 to 20 years?

MR. LAYMON: Yes, sir.

THE COURT: All right...

(Crim. Court File No. 65, Detention Hearing Transcript, p. 26).

Petitioner argues he was "...forced and tricked into signing a so-called Plea Agreement with threats of 15 to 20 years prison sentence" (Court File No. 4 at 13). "The threat is clear... Even a person who is not a layman of the law can see the threat in the words of the prosecution" (Court File No. 4, pp. 8–9). Petitioner argues that in light of Mr. Laymon's remarks at the detention hearing, "... it is clear that the prosecutor would vindictively inflict a harsher punishment on the defendant for exercising his Constitutional right to trial" (Court File No. 4, p. 9). Further, Petitioner asserts, "The question most important is was the Petitioner threatened if he went to trial? Yes..." (Court File No. 4 at 10).

Petitioner also argues his "...conviction was based [sic] Erroneous/Faulty Advice by........................ Trial Counsel. The Trial Counsel induced the Plea Agreement with threats that Petitioner would receive (20) Twenty years if it went to Trial" (Court File No. 3 ¶ 6). Petitioner also alleges he "... pled guilty because the trial lawyer told him if he did not, the prosecutor would get mad and

give him 15 to 20 years" (Court File No. 4 at 20). Petitioner further states his plea agreement is not valid because it treated him unfairly because of his "Latin" heritage: "... it is a fact that nothing was given to Petitioner from the Plea Agreement other than to condemn a man that is Latin by a White Judge, White U.S. Attorney and a White Trial Lawyer; A[ ] plea Agreement that was drafted to kill the Constitutional Rights is an instrument of evil and not a Plea Agreement" (Court File No. 4, Memorandum at 13–14). Petitioner finally alleges he "... was forced into a Plea Agreement by a promised [sic] for a downward departure..." (Court File No. 4, Memorandum, p. 2).

 A guilty plea is considered valid only if entered into intelligently and voluntarily under the totality of the circumstances. *See Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969); *United States v. Layne,* 192 F.3d 556, 577 (6th Cir.1999). A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving or does not understand what he is giving up and receiving in entering a guilty plea. *See Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976). Additionally, a guilty plea may be involuntary where induced by threats, misrepresentation, or promises "that are by their nature improper." *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2548, 81 L.Ed.2d 437 (1984).

Rule 11 imposes a series of requirements on district courts before they may accept a guilty plea. *See* Fed.R.Crim.P. 11. These procedures are designed to en-sure a defendant pleading guilty understands his constitutional rights, the plea is being entered voluntarily with a full understanding of the nature of the crime charged and the consequences of the guilty plea, and a factual basis exists for the crime to which the plea is being offered. *United States v. Goldberg,* 862 F.2d 101, 106 (6th Cir.1988). In accordance with Rule 11(b)(2), the Court inquired as to the voluntariness of Petitioner's guilty plea at his rearraignment:

THE COURT: Has anyone threatened you or anyone else or forced you in any way to plead guilty?

[...]³

PETITIONER: No, Your Honor.

[...]

THE COURT: Aside from your plea agreement—okay?—outside of the plea agreement, has any officer or agent of the government promised or suggested that you will receive a lighter sentence or some other form of leniency if you plead guilty?

[...]

PETITIONER: No, Your Honor.

(Crim. Court File No. 107, Sept. 6, 2001, Rearraignment Transcript, pp. 7–8, 13). These answers were given while Petitioner was under oath. Although Petitioner alleges the "... prosecutor took advantage because the petitioner is a Mexican descendant raised in Mexico, who lacks knowledge of the english language, and the American Law of the United States" (Court File No. 4 at 8), Petitioner was provided with an interpreter during this proceeding. At no point during his hearing before the Court did Petitioner indicate any difficulty understanding what was taking place. Subsequent to his hearings

---

**3.** The Court conducted Petitioner's rearraignment in conjunction with the rearraignments for his codefendants Rose and Vasquez. The ellipses indicate portions of the transcript during which Petitioner's codefendants responded to the questions posed by the Court, or discussed matters not relevant to this portion of Petitioner's claims.

Petitioner did not bring to the Court's attention he had any difficulty understanding what was taking place. And equally as important he has not otherwise shown any prosecutorial or judicial misconduct based on his race or ability to understand English (Crim. Court File No. 107, Sept. 6, 2001, Rearraignment Transcript, at 2). Petitioner was also informed of the maximum sentence he faced for both counts to which he plead and apprized of the possibility the Court could impose an even greater sentence (*Id.* at 16–17, 19). Additionally, Petitioner indicated he had sufficiently discussed the case with his attorney, including the potential applicability of the Sentencing Guidelines, and was satisfied with Mr. Rucker's representation (*Id.* at 6, 18–19).

■ "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). Accordingly, a habeas petitioner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy. *See Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir.1992). *See also United States v. Standiford*, 148 F.3d 864, 868 (7th Cir.1998). Generally, where the Court "scrupulously follows" the procedures required by Rule 11, a criminal defendant is bound by his statements in response to the Court's inquiries. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.1986), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986). The Court here followed the Rule 11 procedures by extensively questioning Petitioner about the voluntariness of his plea (*See* Crim. Court File No. 107, Sept. 6, 2001, Rearraignment Transcript). Moreover, Petitioner has provided no explanation for what he now effectively contends were perjured statements to the Court, thus he is bound by those statements and has not shown extraordinary circumstances that

indicate his answers under oath were not true and his plea was coerced.

In sum, the Court finds no support for Petitioner's allegation any statements Petitioner characterizes as "threats" by Mr. Laymon during the detention hearing, or by his counsel, rendered his guilty plea involuntary. Petitioner also has not put forth any support for his argument the Government's conditional promise in the plea agreement to make a motion for downward departure "forced" him to plead guilty (Crim. Court File No. 83, Plea Agreement; Court File No. 4 at 2). Accordingly, the Court will **DENY** Petitioner's request for relief on this ground.

### B. Ineffective Assistance of Counsel

Petitioner next argues his defense counsel was ineffective, such that his Sixth Amendment right to effective assistance of counsel was violated. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right (3)27 to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ballard v. United States*, 400 F.3d 404, 406 (6th Cir.2005). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas,* 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland,* the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *Ballard,* 400 F.3d at 406.

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The *Strickland* Court empha-

sized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one .... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697, 104 S.Ct. at 2069.

Challenges to guilty pleas based upon ineffective assistance of counsel are governed by this same two-part *Strickland* test. *See Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). Thus, Petitioner must demonstrate counsel's performance fell below an objective standard of reasonableness and there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (*i.e.,* he would not have pleaded guilty). *Id.* at 58–59, 106 S.Ct. at 370; *see also Miller v. Straub,* 299 F.3d 570, 578 (6th Cir.2002).

First, Petitioner notes Mr. Rucker did not file any pretrial motions, specifically discovery motions (Court File No. 4 at 16–17). However, Petitioner does not point to any motions that could or should have been filed, such that Mr. Rucker was unreasonable in not filing them, and also did not indicate he would not have pled guilty had Mr. Rucker filed any such mo-

tions. *See Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578. Petitioner's claim also ignores the practice in this district of discovery being provided to defendants by the United States Attorney without the necessity of filing motions.

▪ Second, Petitioner alleges Mr. Rucker "did not do any pretrial research" and "failed to research or investigate the crime" (Court File No. 4 at 18, 19). However, Petitioner again fails to point to any misunderstanding of or change in the law, or potentially exculpatory facts of which this pretrial research or investigation would have informed Mr. Rucker, such that these failures were objectively unreasonable. *See Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578. Petitioner also alleges Mr. Rucker "failed to prepare for trial" and "coerced the petitioner's guilty plea because of his unpreparedness," essentially arguing Mr. Rucker forced him to plead to conceal his lack of preparation for trial. While forcing a defendant to plead guilty to mask counsel's unpreparedness for trial certainly would fall below an objective standard of reasonableness, Petitioner has not set out any facts that make this a likely scenario. A petitioner under § 2255 must set forth specific facts entitling him to relief; "[c]onclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir.1961). In light of Petitioner's statements under oath during the rearraignment that no one threatened or forced him to plead guilty, and his lack of any facts indicating the contrary, the Court must reject this claim.

▪ Third, Petitioner notes Mr. Rucker "failed to subpoena witness [sic] in this case" (Court File No. 4 at 18). However, Petitioner does not point to any particular witnesses who would have testified on his behalf, specify in what proceeding they could have testified, or state he would not have pled guilty had Mr. Rucker subpoenaed such witnesses. Petitioner's mere allegation without any supporting facts does not support a finding Mr. Rucker fell below an objective standard of reasonableness in not subpoenaing witnesses. *See Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

▪ Fourth, Petitioner argues Mr. Rucker "did not tell petitioner of the consequences of the Plea" (Court File No. 4 at 20). Again, Petitioner does not point to a consequence of his plea of which Mr. Rucker failed to inform him that would have caused him not to plead guilty if he had been informed of it, thus this claim fails on the second prong of the *Strickland* test.

▪ Fifth, Petitioner seems to argue Mr. Rucker failed to advise him of potential defenses that might have led to an acquittal had he gone to trial. Petitioner states he "... was charged because he was in the car outside the house of where the crime took place," and Mr. Rucker should have informed him "[t]he fact of mere presence is not reason for arrest"(Court File No. 4 at 20). While the United States Court of Appeals for the Sixth Circuit has held, in some circumstances, "mere presence" in a location where a drug transaction takes place is not enough to sustain a conviction of conspiracy in violation of 21 U.S.C. § 846, *see United States v. Pearce,* 912 F.2d 159, 162 (6th Cir.1990), much more than Petitioner's "mere presence" is outlined in the Factual Basis on which Petitioner's plea was based. The Factual Basis states "... defendant Garnica drove Estrada to the hotel and waited in the parking lot for Estrada... Several witnesses, including at least two codefendants, would testify Garnica was supplying Estrada with methamphetamine..." (Crim. Court File No. 86, Factual Basis, p.

2). During the rearraignment, Petitioner stated this document had been interpreted to him, was true and correct, and did not contain any statements that were not true (Crim. Court File No. 107, Sept. 6, 2001 Rearraignment Transcript, at 20–22). Additionally, during the sentencing hearing, Petitioner took the stand while the Court was considering Petitioner's objection to a sentencing enhancement and testified under oath he delivered methamphetamine to Estrada for resale (*See* Crim. Court File No. 110, Jan. 4, 2002 Sentencing Hearing Transcript, pp. 28–31).

Under oath, then, Petitioner agreed with the statements in the factual basis, that he acted as the driver for the two-pound drug deal and supplied methamphetamine to Estrada, and himself affirmatively testified he supplied methamphetamine to Estrada. Petitioner's agreement with and assertion of these facts showing involvement in the drug conspiracy during the rearraignment and sentencing seriously undercuts his argument Mr. Rucker's failure to apprise him of the law on "mere presence" and a drug conspiracy charge fell below an objective standard of reasonableness. *See Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578. Had Petitioner testified he was merely present at the site of the drug transaction, perhaps Mr. Rucker should have advised him of the defense and counseled him he would likely be acquitted if he went to trial, but since the facts to which he testified are remarkably different from cases allowing such a defense, Mr. Rucker was not unreasonable in not counseling Petitioner about them, and Petitioner has not shown he would not have plead guilty if he had known of this defense.

■ Sixth, Petitioner argues he was denied the effective assistance of counsel because Mr. Rucker "did not object, nor did he seek a downward departure promised by the government pursuant to Section 5K1.1 of the Federal Sentencing Guidelines and Title 18, United States Code, Section 3553(e)" (Court File No. 4 at 3). The Court notes Mr. Rucker could not have made a motion for a downward departure under § 5K1.1, since that section allows only the Government to make such a motion, therefore this was not objectively unreasonable. *See* United States Sentencing Guidelines ("USSG") § 5K 1.1 ("Upon motion of the government... the court may depart from the guidelines."). Even assuming Mr. Rucker's failure to object to the Government's decision not to make a motion under § 5K1.1 fell below an objective standard of reasonableness, Petitioner has not alleged he would not have pleaded guilty if Mr. Rucker had made such an objection, and fails to meet the second prong of the *Strickland* test. *See Hill,* 474 U.S. at 58–59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

Lastly, Petitioner alleges Mr. Rucker promised him he would receive a sentence of less than six years if he pleaded guilty, and this was ineffective assistance of counsel since he did plead guilty but received a sentence of more than six years (Court File No. 4 at 21). Petitioner again has not alleged any specific facts indicating Mr. Rucker actually made this promise. *See O'Malley,* 285 F.2d at 735. No such promise about length of sentence appears in the plea agreement, in which Petitioner and the Government agreed "[t]he Court may impose any lawful term of imprisonment up to the statutory maximum..." (Crim. Court File No. 83, Plea Agreement at 1). Further, during the rearraignment, the Court asked Mr. Laymon to advise Petitioner of the mandatory minimum and statutory maximum for the offense to which he was pleading, and Mr. Laymon told Petitioner, "... as to Mr. Garnica, he would be facing a minimum mandatory confinement of 10 years to life in prison..." (Crim. Court File No. 107, Sept. 6, 2001 Rearraignment Transcript, p. 17).

Thus Petitioner was on notice before he pleaded guilty he faced a much higher sentence than six years, but did not decide not to enter a plea at that time. During that proceeding, the Court asked Petitioner a series of questions about his understanding of the Guidelines' effect on his sentence, all of which indicated the Court, not the attorneys, had discretion to set Petitioner's sentence (*Id.* at 19). The Court also asked Petitioner during the re-arraignment, "Do you understand that if the sentence you receive is more severe than what you expect, you will be bound by your plea and will have no right to withdraw from your plea?," to which Petitioner answered, "Yes, Your Honor" (*Id.* p. 20).

■ Even if Petitioner had alleged sufficient specific and corroborated facts for the Court to believe Mr. Rucker promised him a sentence of less than six years if he pleaded guilty, the Court cured any prejudice that might have resulted from such a promise during the plea colloquy by making it clear the Court, not the parties, would determine his sentence, and Petitioner would be bound to his plea even if his sentence were more severe than he expected.

Petitioner has not supported any of his claims his counsel was ineffective by showing Mr. Rucker fell below an objective standard of reasonableness and Petitioner would not have plead guilty if his counsel had been effective. Accordingly, the Court will **DENY** Petitioner's claim for relief on this ground.

### C. Breach of Plea Agreement by Government

■ Petitioner next asserts the Government breached the plea agreement be-cause it "... promised in Plea Agreement to move for downward departure, but fail [sic] to do so" (Court File No. 1 at 4). The Court finds the Government did not breach the terms of the plea agreement by its failure to move for a downward departure. The plea agreement contains extensive language regarding this downward departure, all of which clearly gives the Government discretion over whether or not it will make such a motion:

At the time of sentencing the United States agrees to bring to the Court's attention the nature, extent, and value of the defendant's cooperation. This information will be provided to the Court so that it may be considered in determining a fair and appropriate sentence under the facts of the case. **If, in the view of the government**, the defendant renders substantial assistance to the government, at the time of sentencing the government will recommend to the court that the defendant receive a downward departure from the sentencing guidelines range pursuant to Section 5K1.1 of the Federal Sentencing Guidelines and Title 18, United States Code, Section 3553(e). **The determination as to whether or not the defendant has rendered substantial assistance will be made solely by the government**...

(Crim. Court File No. 83, Plea Agreement, p. 3–4) (emphasis added). Because the Government retained discretion over whether to make a motion for substantial assistance, it did not break any promise in the plea agreement by failing to make such a motion when it determined Petitioner had not given it "substantial assistance."[4]

---

4. The Court would note Mr. Laymon did make § 5K1.1 motions for Petitioner's codefendants Rose and Vasquez, because of their cooperation after their arrest in Meigs County, which ultimately led to the indictments of Estrada, Knight, and Petitioner (*See* Crim. Court File No. 110, January 4, 2002 Sentencing Hearing Transcript, pp. 49–51).

Further, Petitioner did not allege he actually gave substantial assistance to the Government, a necessary condition precedent to the Government's decision to make a motion for a § 5K1.1 downward departure.

■ Petitioner asserts the Court can review the Government's refusal to move for a downward departure if the Government acted in bad faith; the Court will take this as an allegation the Government acted in bad faith in its refusal to move for a downward departure (Court File No. 4 at 10). This Court may only review the Government's decision not to move for a downward departure for unconstitutional motives, such as race; review for bad faith or lack of rational basis is not permitted. *United States v. Moore*, 225 F.3d 637, 641 (6th Cir.2000). Thus the Court may not look for bad faith by the Government, only unconstitutional motives. Petitioner elsewhere alleges "nothing was given to Petitioner from the Plea Agreement other than to condemn a man that is Latin by a White Judge, White U.S. Attorney and a White Trial Lawyer" (Court File No. 4 at 13–14). However, Petitioner has not presented any facts tending to indicate the Government based in its decision not to move for a downward departure on his race, *see O'Malley*, 285 F.2d at 735, and the record indicates his lack of substantial assistance was in fact the motivation for this decision. At the sentencing hearing, Mr. Laymon stated Petitioner

> has provided assistance to the United States in the sense he has sat down with us and talked with us about some very important topics, as I'm sure the Court could well imagine what we asked him about. So on his behalf I would say to the Court that he has been very cooperative. And although we haven't filed a 5K in that regard, perhaps a future motion will be forthcoming.

(Crim. Court File No. 110, Jan. 4, 2002 Sentencing Hearing Transcript, p. 52).

The Court finds this tends to indicate the Government appreciated Petitioner's assistance but it had not produced the same results, such as leading to further indictments, as the assistance of his codefendants, and this was the reason it did not make a § 5K1.1 motion. Petitioner has not show any evidence of racial motivation, other than his bald assertions, therefore, the Court also will **DENY** Petitioner's claim for relief on this ground.

### D. Superseding Indictment.

Finally, Petitioner argues "[i]n the superseding indictment it was not submitted to a jury nor proven by the government beyond a Reasonable doubt and therefore lacks the extraordinary sense of Justice. In many ways it lead [sic] to where only a sub-human Intelligence could grasp the point of the Plea" (Court File No. 1 at 4). Petitioner also refers to double jeopardy in his Memorandum, stating,

> ... Petitioner plead guilty to a Superseding Indictment which falls within the Double Jeopardy Clause. Since there was only one witness which was the codefendant and it was the only testimony at hand, no Jury would have Indicted the Petitioner without more evidence. Did the Superseding Indictment go before a Jury, the Defense Counsel said it did not have to go. Truly a violation of the Fair Trial Clause...

(Court File No. 4 at 7). The Court cannot ascertain what argument Petitioner is making as to any violation of the Double Jeopardy Clause, which states no person shall "be subject for the same offense to be twice put in jeopardy of life or limb..." U.S. Const. Amend. V. This generally has been held to prohibit a second prosecution for an offense after one has been convicted or acquitted of that offense, and multiple punishments for the same offense. *See generally Smith v. Massachusetts*, —— U.S. ——, 125 S.Ct. 1129, 160 L.Ed.2d 914

(2005). There has been only one prosecution and one punishment in this case, thus the Court cannot discern any violation of the Double Jeopardy Clause here. Therefore, the Court will DENY Petitioner's claim for relief on this ground.

## IV. CONCLUSION

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[5] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1073 (6th Cir.1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot,* 463 U.S. at 893, 103 S.Ct. at 3394. *See also* 28 U.S.C.

§ 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis,* 516 F.Supp. 911, 913 (N.D.Ga.1980) (quoting *United States ex rel. Jones v. Richmond,* 245 F.2d 234 (2d Cir.), *cert. denied,* 355 U.S. 846, 78 S.Ct. 71, 2 L.Ed.2d 56 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R.App. P. 24(a) further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R.App. P. 24(a), that any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis. United States v. Atkins,* 171 F.Supp.2d 769 (W.D.Tenn.

---

**5.** The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States,* 117 F.3d 949, 951 (6th Cir.1997); *cf. McGore v. Wrigglesworth,* 114 F.3d 601, 610 (6th Cir.1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pau-*

*per is* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford,* 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

### ORDER

For the reasons set forth in the accompanying Memorandum, the Court finds Petitioner Hector Garnica's conviction and sentencing were not in violation of the Constitution or laws of the United States and, therefore, **DENIES** Petitioner's motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (Court File Nos. 1, 3). Further, the Court certifies that any appeal in this matter by Petitioner would not be taken in good faith and no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c).

**SO ORDERED.**